# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-08-00723-CR

**Rolando Ramirez Jr., Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF HAYS COUNTY, 22ND JUDICIAL DISTRICT
### NO. CR-07-471, HONORABLE WILLIAM HENRY, JUDGE PRESIDING

## O P I N I O N

On March 2, 2007, a grand jury returned an indictment charging appellant Rolando Ramirez with intoxication manslaughter, a second-degree felony. *See* Tex. Penal Code Ann. § 49.08 (West Supp. 2008). The indictment included a deadly weapon allegation. On August 22, 2008, a jury found Ramirez guilty of intoxication manslaughter and found the deadly weapon allegation to be true. The judge assessed Ramirez's punishment at eighteen years' confinement. In three points of error, Ramirez argues that the trial court erred in denying his motion for a new trial because (1) his counsel provided ineffective assistance by failing to elect jury sentencing on his behalf, barring him from receiving a sentence of probation and depriving him of his rights under the Sixth Amendment to the United States Constitution, (2) the State failed to preserve evidence relating to his case, depriving him of his due process rights under the Fourteenth Amendment to the United States Constitution, and (3) the loss of evidence by the State also deprived

him of his due course of law rights under the Texas Constitution. Because we conclude that the trial court erred in denying Ramirez's motion for a new trial on the basis of ineffective assistance of counsel at sentencing, we reverse that portion of the judgment assessing punishment and remand the cause to the trial court for a new punishment hearing.

## BACKGROUND

During the evening of March 1 and the early morning of March 2, 2007, Guillermo Balderrama and his cousin, Jonathan Beard, went to two bars in Austin, Texas. According to Beard's testimony, between the hours of approximately 9:30 p.m. and 1:00 a.m., Balderrama and Beard each consumed four or five beers. At approximately 1:00 a.m. on the morning of March 2, 2007, Balderrama and Beard left the second bar to go to Balderrama's house in Kyle, Texas. They headed southbound on Interstate Highway 35 (IH-35). They were both riding motorcycles, with the motorcycles in an offset position in the center lane of the three-lane highway. Beard was riding slightly ahead of Balderrama in order to regulate their speed, as Balderrama's motorcycle was not equipped with a speedometer.

At approximately 9:00 p.m. on the evening of March 1, 2007, appellant Rolando Ramirez met his brother, Joe Ramirez, at a bar in Austin.[1] Ramirez consumed two margaritas and two or three beers before going to a pool hall, where he consumed at least four more beers. At approximately 12:30 a.m. on the morning of March 2, 2007, Ramirez and his brother left

---

[1] For the purposes of this opinion, appellant Rolando Ramirez will be referred to as "Ramirez," while his brother, Joe Ramirez, will be referred to as "Joe Ramirez."

the pool hall to return home in Ramirez's Honda Civic. They traveled southbound on IH-35 with Ramirez behind the wheel, staying primarily in the right-hand lane of the three-lane highway.

In the early morning of March 2, near mile marker 220 in Buda, Balderrama's motorcycle and Ramirez's car collided. The collision was witnessed by Craig Kitchens, who was traveling behind Beard, Balderrama, and Ramirez on IH-35 when the accident occurred. Kitchens testified that he noticed that the two motorcycles were riding in an offset position. According to Kitchens, after the first motorcycle had passed Ramirez's car, "I noticed [Ramirez's] car shoot off the right-hand side of the road and then swerve right back into the middle lane facing north." Balderrama, who had been riding behind Beard, then "hit the headlight of the driver's side of the car."

Other witnesses also offered their recollections of the collision. Beard, like Kitchens, testified that he saw Ramirez's car veer off the highway before the accident. When he looked back to check on Balderrama, he saw the collision between Balderrama and Ramirez in a "big flash of light" and witnessed Balderrama's motorcycle leave the ground. However, Joe Ramirez, who was in the passenger's seat of his brother's car, testified that Balderrama's motorcycle hit Ramirez's car before the car veered off the road. According to this version of events, Ramirez's car "spun out of control" and off the highway due to the collision with Balderrama's motorcycle.

Balderrama, who was not wearing a helmet, was thrown from his motorcycle. An ambulance quickly arrived on the scene and took Balderrama to the hospital, where he died due to injuries sustained from the accident. Blood samples taken from Balderrama at different times during treatment at the hospital indicated a blood-alcohol content of between .09 and .12 percent.

3

After the accident, Trooper Chris Barclay of the Texas Department of Public Safety (DPS) police arrived to investigate. Barclay testified that he took field notes and made a video recording of the crime scene. According to witnesses at the scene, he also collected witness statements, including those of Beard and Joe Ramirez. In addition, Barclay administered field sobriety tests to Ramirez. Barclay performed the horizontal gaze nystagmus test and had begun to perform the walk-and-turn test when Ramirez refused to complete any further testing. Barclay indicated that, based on the testing he had done and his observations of Ramirez, he concluded that Ramirez was intoxicated.

DPS Trooper Kurt McWhinney testified that he also assisted in the investigation, taking photographs of the crime scene and speaking to Ramirez, who was acting in a "lethargic" manner and slurring his words to the extent that McWhinney had difficulty understanding him. McWhinney requested a blood specimen from Ramirez. When Ramirez refused, McWhinney took him to the Central Texas Medical Center in San Marcos for a mandatory blood specimen. The specimen indicated a blood-alcohol concentration of between .24 and .25 percent as of 3:00 a.m. on March 2, 2007.[2]

The grand jury indicted Ramirez, charging him with intoxication manslaughter, a second-degree felony. *See* Tex. Penal Code Ann. § 49.08. The indictment included a "3g" allegation regarding the use of Ramirez's vehicle as a deadly weapon. When the jury makes a finding that a "3g" offense has been committed, only the jury (and not the judge) can assess a punishment of

---

[2] Under the penal code, a person is intoxicated when he has a blood alcohol concentration of .08 or more. Tex. Penal Code Ann. § 49.01(2)(B) (West 2003). Under this definition, Ramirez's level of intoxication was three times the legal limit.

4

probation. *See* Tex. Code Crim. Proc. Ann. art. 42.12, § 3g(a)(2) (West Supp. 2008). For the jury to be eligible to assess probation, defense counsel must file a sworn motion with the judge indicating that the defendant has not previously been convicted of a felony, *see id.* § 4(e), and elect jury sentencing in writing prior to voir dire of the jury, *see id.* art. 37.07, § 2(b). If defense counsel fails to elect jury sentencing, the jury may only assess punishment if the prosecutor consents. *See id.* Though defense counsel filed a sworn statement stating that Ramirez had never been convicted of a felony, she failed to elect jury sentencing prior to voir dire of the jury panel.

Before trial began, several pieces of evidence relating to the case were lost or destroyed while in the possession of the State. All of the documents in Barclay's possession from the investigation at the scene, including field notes and witness statements, were lost after the storage closet in which Barclay was keeping them flooded during Hurricane Rita. The tape recording that Barclay made of the crime scene was destroyed by a faulty VCR. Finally, according to Barclay's testimony, Balderrama's motorcycle was released to a towing company, after which the police did not keep track of its whereabouts.

At trial, defense counsel argued that Barclay should not be allowed to testify as to the contents of his notes or the witness statements he took, as the defense would not have access to them. The court limited Barclay's testimony to his observations at the scene and his opinion on the cause of the accident. Before closing statement, defense counsel received a general jury instruction regarding the missing evidence: "If you [the jury] find that the State failed to preserve evidence, then you may choose to infer that the missing evidence would have been favorable to the defendant." Defense counsel was then able to discuss the missing evidence during closing statement.

5

After the jury found Ramirez guilty of intoxication manslaughter and made an affirmative finding with regard to the deadly weapon charge, the trial moved to the punishment phase. Before proceedings began, defense counsel, the prosecutor, and the trial judge discussed the matter of jury sentencing on the record. Despite the fact that defense counsel had not followed the required pretrial procedures, the prosecutor offered to allow the defendant to elect jury punishment, but only on the condition that defense counsel waive Ramirez's right to appeal on the basis that the jury had not been asked questions relating to punishment during voir dire. Defense counsel asserted that she could not waive that right on behalf of her client, but did not consult her client regarding this decision. Consequently, as the prosecutor and defense counsel could not come to an agreement allowing the defendant to elect jury sentencing, punishment proceedings were tried to the judge, who set Ramirez's punishment at eighteen years' confinement.

Following his conviction and sentencing, defense counsel filed a motion for a new trial. The motion alleged, inter alia, that a new trial was warranted on the bases of ineffective assistance of counsel at the punishment phase of the trial and the State's failure to preserve and disclose evidence to the defense. Before the hearing, defendant was appointed new counsel, who represented him at the hearing on the motion for a new trial and on appeal.[3]

At the hearing on Ramirez's motion for a new trial, defense counsel, the prosecutor, and Ramirez all testified about defense counsel's actions during the trial. Defense counsel testified that she had made "a mistake" in failing to elect jury sentencing from the start. She explained, "for

---

[3] For the purposes of this opinion, "defense counsel" has and will continue to refer only to Ramirez's counsel at trial, and not to counsel who represented him at the motion for a new trial and on appeal.

6

whatever reason I believed that he could still get probation if he went to the judge [for sentencing]," and admitted that she advised Ramirez "that if he wanted probation that he would have a better shot with the judge." When asked if such action had been part of a valid trial strategy, defense counsel responded, "No. No, of course not."

Defense counsel and the prosecutor both testified that they had several discussions about jury sentencing during the trial, after defense counsel's mistake had come to light. The purpose of these conversations was to attempt to rectify the situation. The prosecutor testified that defense counsel was upset during some of these meetings, and that at one point she broke down in tears.

According to their testimony, defense counsel and the prosecutor also engaged in numerous plea negotiations involving a probationary sentence for Ramirez. The prosecutor offered a punishment of probation before trial, which the defense declined. The prosecutor again offered Ramirez probation during the sentencing phase of the trial, after the jury had found Ramirez guilty. The prosecutor and the defense reached an agreement for a ten-year probationary sentence which included 180 days' imprisonment and participation in a Substance Abuse Felony Punishment (SAFP) program. The judge, however, refused to accept the agreement, instead assessing the sentence of eighteen years' confinement.

Ramirez testified at the hearing on the motion for a new trial that defense counsel had told him throughout the trial that the judge could assess probation, and that if he had known that the judge could not impose a sentence of probation following a "3g" finding, he would have elected jury sentencing. Following the hearing, the trial court denied Ramirez's motion for a new trial, and this appeal followed.

## STANDARD OF REVIEW

We review a trial court's denial of a motion for a new trial for abuse of discretion. *See State v. Herndon*, 215 S.W.3d 901, 907 (Tex. Crim. App. 2007). Accordingly, when analyzing the trial court's failure to grant a new trial on the basis of ineffective assistance of counsel, we view the relevant legal standards through the prism of abuse of discretion. *State v. Gill*, 967 S.W.2d 540, 542 (Tex. App.—Austin 1998, pet. ref'd). We do not substitute our judgment for that of the trial court; rather, we decide whether the trial court's decision was arbitrary or unreasonable. *Webb v. State*, 232 S.W.3d 109, 112 (Tex. Crim. App. 2007). A trial court abuses its discretion in denying a motion for new trial only when no reasonable view of the record could support the trial court's ruling. *Holden v. State*, 201 S.W.3d 761, 763 (Tex. Crim. App. 2006). The trial court's "discretion is not, however, unbounded or unfettered. A trial judge has discretion to grant or deny a motion for new trial 'in the interest of justice,' but 'justice' means in accordance with the law." *Herndon*, 215 S.W.3d at 906.

## DISCUSSION

**Ineffective Assistance of Counsel**

In his first point of error, Ramirez argues that the trial court erred in denying his motion for a new trial based on ineffective assistance of counsel during the punishment phase of trial. Ramirez claims that defense counsel's misunderstanding of the law relating to probation denied him effective assistance of counsel as guaranteed by the Sixth Amendment to the United States Constitution. Claims of ineffective assistance of counsel are governed by the United States Supreme Court's decision in *Strickland v. Washington*. 466 U.S. 668 (1984); *see also*

8

*Hernandez v. State*, 988 S.W.2d 770, 770 (Tex. Crim. App. 1999) (holding that *Strickland* standard applies in noncapital sentencing proceedings). Under the two-pronged *Strickland* standard, a defendant must show that (1) counsel's performance was deficient and (2) counsel's deficient performance prejudiced the defense, resulting in an unreliable or fundamentally unfair outcome. *See Strickland*, 466 U.S. at 687-88.

*A. Deficient Performance*

To show deficient performance under *Strickland*, a defendant must show that counsel's performance fell below an objective standard of reasonableness. *See id.* The review of defense counsel's representation is highly deferential and presumes that counsel's actions fell within a wide range of reasonable professional assistance. *Tong v. State*, 25 S.W.3d 707, 712 (Tex. Crim. App. 2000). To overcome the presumption of reasonable professional assistance, "[a]ny allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness." *Thompson v. State*, 9 S.W.3d 808, 814 (Tex. Crim. App. 1999).

The record on direct appeal will only in rare circumstances be adequate to show that counsel's performance fell below an objectively reasonable standard of performance. *See Andrews v. State*, 159 S.W.3d 98, 102 (Tex. Crim. App. 2005) (indicating that claims of ineffective assistance of counsel are normally best left for habeas corpus proceedings); *see also Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002) ("Under normal circumstances, the record on direct appeal will not be sufficient to show that counsel's representation was so deficient and so lacking in tactical

or strategic decision making as to overcome the presumption that counsel's conduct was reasonable and professional.").

The record in this case, however, is uniquely developed on direct appeal, thanks to the hearing held on Ramirez's motion for a new trial. The hearing featured testimony by defense counsel, the prosecutor, and the defendant, Ramirez. The testimony by these witnesses provides ample evidence that defense counsel's failure to elect jury sentencing was based on her misunderstanding of the law. The evidence begins with the testimony of defense counsel herself, who clearly indicated that she had made a "mistake" in failing to elect jury sentencing and agreed that she had been "wrong about the law." She explained that she simply did not realize that her client was charged with a "3g" offense that would prevent the judge from assessing probation:

> I am used to 3g claims like Aggravated Robbery or Aggravated Assault and they trigger—trigger my brain of how punishment needs to be handled. And for whatever reason, being an Intoxication Manslaughter, it—no, it did not jump out at me. And the usual thing that I think of with a 3g offense did not register in my brain.

The actions of defense counsel during the trial are consistent with her assertion that she made a "mistake." According to Ramirez's testimony, defense counsel told him from the start that he would be eligible for a probationary sentence and indicated numerous times throughout the trial that the judge would be able to sentence him to probation. She never informed Ramirez that such a sentence would be contingent upon the jury making a negative finding on the deadly weapon charge. Defense counsel's misunderstanding of the law was further evidenced by her behavior during the sentencing hearing, during which she presented testimony to the trial court indicating that

10

her client would be a good candidate for probation and asked the court to grant a sentence of probation in her closing statement.

However, in a case involving counsel's misunderstanding of the law relating to probation, "[c]ounsel's mistake, alone, is insufficient to establish an ineffective assistance of counsel claim." *Isham v. State*, 258 S.W.3d 244, 252 (Tex. App.—Eastland 2008). The defendant must also show that (1) the defendant was initially eligible for probation, (2) counsel's decision was not part of a sound trial strategy, (3) the defendant's decision not to seek probation was based on counsel's erroneous advice, and (4) the defendant would have made a different decision if his counsel had correctly informed him of the law. *See id.* (citing *State v. Recer*, 815 S.W.2d 730, 731-32 (Tex. Crim. App. 1991)).[4]

---

[4] *Recer* traces its origins to pre-*Strickland* sentencing jurisprudence in Texas. Prior to the United States Supreme Court's decision in *Strickland*, ineffective assistance of counsel claims in Texas were governed by *Ex parte Duffy*. 607 S.W.2d 507 (Tex. Crim. App. 1980). After *Strickland*, the Texas Court of Criminal Appeals held that the *Duffy* standard still applied in noncapital sentencing proceedings. *Ex parte Cruz*, 739 S.W.2d 53, 58 (Tex. Crim. App. 1987). *Recer*, which dealt with counsel's misunderstanding of the law relating to probation, belongs to the line of cases stemming from *Duffy* and *Cruz*. *See State v. Recer*, 815 S.W.3d 730, 731 (Tex. Crim. App. 1991) (citing *Duffy* and *Cruz*, and not *Strickland*, as controlling for determinations of counsel's effectiveness during sentencing).

In 1999, the court of criminal appeals overturned *Cruz*, explaining that the decision removed the second Strickland prong from consideration in noncapital sentencing proceedings. *See Hernandez v. State*, 988 S.W.2d 770, 771 (Tex. Crim. App. 1999) ("[A]s a matter of federal constitutional law *Cruz* effectively decided a defendant does not have to show prejudice from deficient attorney performance at noncapital sentencing proceedings."). The court stated that *Strickland*, not *Duffy* and *Cruz*, controlled determinations of ineffective assistance of counsel at sentencing. *Id.* at 770.

The court, however, did not disavow the *Recer* test, and "courts have continued to cite to the [*Recer*] standard for claims of ineffective assistance of counsel based on counsel's misunderstanding of the law relating to probation." *See State v. Bounhiza*, __ S.W.3d __, No. 03-08-00261-CR, 2009 Tex. App. LEXIS 6529, at *11 n.4 (Tex. App.—Austin Aug. 21, 2009, no pet.) (citing *Isham v. State*, 258 S.W.3d 244, 252 (Tex. App.—Eastland 2008, pet. ref'd)) (indicating that we will

Regarding the first factor, the record shows that Ramirez was eligible for probation. Ramirez filed a sworn statement prior to trial indicating that he had no prior felony convictions. Further, at the sentencing hearing, the defense offered witness testimony indicating Ramirez's eligibility for probation.

The second factor requires a showing that defense's counsel's actions were not part of any valid trial strategy. When asked whether her actions were part of a trial strategy, defense counsel responded with answers such as, "No. No, of course not," and, "No way." Defense counsel's characterization of events is supported by the testimony offered by the prosecutor at the hearing on Ramirez's motion for a new trial. The prosecutor specifically stated that he did not believe that defense counsel's failure to elect jury sentencing constituted any sort of trial strategy. The prosecutor formed this opinion after having numerous discussions with defense counsel regarding the issue of jury sentencing at different times throughout the proceedings, including during the trial, during the interim between the guilt/innocence phase and the punishment phase, and at the punishment hearing.

The State argues that defense counsel's actions were in fact part of a valid trial strategy, maintaining that she thought that her client would be found innocent of the deadly weapon charge, following which the judge would be able to assess a punishment of probation. The State also

continue to apply both *Strickland* and *Recer* in the probation context "until we hear differently from the court of criminal appeals"). As *Recer* springs from *Duffy* and *Cruz*, which deal with the first prong of *Strickland*, the *Recer* test is particularly applicable to discussions of counsel's deficient performance in cases involving counsel's misunderstanding of the law relating to probation. *See Hernandez*, 988 S.W.2d at 771 (equating analysis under *Duffy* and *Cruz* to analysis under the first prong of *Strickland*); *see also Isham*, 258 S.W.3d at 251 (using *Recer* to analyze deficient performance under the first prong of *Strickland*).

argues that, as defense counsel had several opportunities to change the sentencing election of her client, Ramirez should not now be allowed another "bite at the apple."

We need not speculate, however, regarding defense counsel's motives in this case. The record, which details the actions of defense counsel and includes the sworn testimony of defense counsel, the defendant, and the prosecutor, refutes the State's position that defense counsel's actions constituted trial strategy. Rather, the accumulated evidence clearly indicates that she failed to understand the relevant law. Further, defense counsel's testimony at the hearing on Ramirez's motion for a new trial indicates that she never perceived an opportunity to change her client's election without waiving his rights on appeal, which she felt she did not have the authority to do. Accordingly, the record indicates that defense counsel's actions were not part of a valid trial strategy in satisfaction of the second *Recer* factor.

The testimony of Ramirez at the hearing on the motion for a new trial addresses the third and fourth factors. Ramirez testified that he had little understanding of his options beyond the information provided by defense counsel and that defense counsel consistently maintained that the judge could impose a punishment of probation. This testimony indicates that Ramirez's decisions were based on the erroneous advice of counsel, satisfying the third factor. Ramirez further testified that, had he known that only the jury could assess a punishment of probation in a case involving a "3g" finding, he would have chosen to be sentenced by the jury. Accordingly, Ramirez's testimony also satisfies the fourth and final factor, as it establishes that his decision would have been different if defense counsel had correctly informed him of the law.

The evidence presented by Ramirez shows that counsel's performance was deficient, meeting the requirements of the *Recer* test and satisfying the first prong of *Strickland*. *See* 466 U.S. at 687.

B. *Prejudice*

Under the second *Strickland* prong, a defendant must establish that the deficient performance of counsel prejudiced the defense. *See id.* A defendant establishes prejudice under the second prong if he shows that a reasonable probability exists that, but for the deficient performance, the outcome of the proceeding would have been different. *See id.* at 694; *see also Ex parte Cash*, 178 S.W.3d 816, 818 (Tex. Crim. App. 2005). A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Strickland*, 466 U.S. at 694. The court of criminal appeals has held that, when a defendant is prevented from seeking probation that he would otherwise be eligible for, the relevant inquiry is "whether there is a reasonable probability that applicant's sentencing jury would have recommended probation had the issue been submitted to it." *Cash*, 178 S.W.3d at 819.

In this case, the record reflects a reasonable probability that the outcome at sentencing would have been different sufficient to undermine confidence in the outcome as it currently stands. As a threshold matter, the record indicates that Ramirez had no prior felony convictions and was eligible for probation. With regard to whether the jury would have assessed probation, the actions of the prosecutor indicate that such a probability existed. According to the testimony of the prosecutor during the hearing on Ramirez's motion for a new trial, he offered defendant a sentence of probation both before the guilt/innocence phase of trial and at the punishment phase of trial, *after* the jury had found Ramirez guilty. The defendant accepted the second plea bargain, but the judge

14

refused to accept it, instead sentencing the defendant to eighteen years' confinement.[5] This offer, however, indicates the prosecutor's assessment that probation was an appropriate sentence for Ramirez's offense. This position is reflected in the prosecutor's testimony during the hearing on Ramirez's motion for a new trial, during which he agreed that probation would have been a "good outcome" to the case and further stated, "I wouldn't have made [the offer of probation] if I didn't think it was potentially the right thing to do." According to the prosecutor, the victim's family also agreed that probation was an appropriate punishment for Ramirez. Given that the second offer of probation was made after a finding of guilt by the jury, there is a reasonable probability of the jury assessing probation sufficient to undermine confidence in the sentence assessed by the court.

The prosecutor's opinion of the appropriateness of probation, his offer of probation following the jury's finding of Ramirez's guilt, and Ramirez's eligibility for probation establish a reasonable probability that Ramirez would have received probation from the jury. This probability, particularly in light of the sentence of eighteen years' confinement that Ramirez actually received, undermines confidence in the outcome of the punishment phase of the trial. Accordingly, Ramirez meets the requirements of the second prong of *Strickland*.

Defense counsel's actions denied Ramirez the effective assistance of counsel under *Strickland*. Even through the lens of the abuse of discretion standard, the extensively developed

---

[5] We note that the court of criminal appeals has found that no prejudice exists under *Strickland* when defense counsel fails to request that the jury consider probation and the jury returns a verdict of seventeen years. *See Ex parte Cash*, 178 S.W.3d 816, 819 (Tex. Crim. App. 2005) (citing *Mercado v. State*, 615 S.W.2d 225, 228 (Tex. Crim. App. 1981)) (explaining that jury assessing seventeen-year punishment would not have considered probation). We note that *Cash* and *Mercado* are distinguishable from this case, as in this case it was the judge, and not the jury, who assessed Ramirez's punishment.

15

record on this matter so clearly supports the deficiency and prejudice prongs of *Strickland* as to fall outside the zone of reasonable disagreement. Consequently, we hold that the trial court abused its discretion in denying Ramirez's motion for a new trial based on ineffective assistance of counsel at the punishment phase of the trial. Ramirez's first point of error is sustained with regard to punishment only. *See* Tex. R. App. P. 21.9(a) (stating that "a court must grant only a new trial on punishment when it has found a ground that affected only the assessment of punishment").

**Due Process**

In his second point of error, Ramirez argues that the State's failure to preserve evidence violated his due process rights. Specifically, Ramirez argues that the destruction of Barclay's case materials, including field notes, witness statements, and a videotape of the crime scene, along with the loss of Balderrama's motorcycle, deprived him of his rights under the Due Process Clause of the Fourteenth Amendment.[6] *See* U.S. Const. Amend. XIV.

In cases involving the State's failure to preserve evidence in a criminal trial, the United States Supreme Court has drawn a distinction between "material, exculpatory evidence" and "potentially useful evidence." *See Arizona v. Youngblood*, 488 U.S. 51, 58 (1988); *see also State v. Vasquez*, 230 S.W.3d 744, 748 (Tex. App.—Houston [14th Dist.] 2007, no pet.). A federal due process violation occurs whenever the State suppresses or fails to disclose material, exculpatory

---

[6] The headings for Ramirez's second and third points of error indicate that the State's failure to preserve evidence affected Ramirez's defense only in that it rendered the testimony of Barclay inadmissible. However, the arguments following these headings clearly address additional effects stemming from the lost evidence, including hampered investigation, cross-examination, and accident reconstruction. We construe these points of error liberally and address all of the issues discussed in appellant's brief. *See* Tex. R. App. P. 38.9.

16

evidence, regardless of whether the State acted in bad faith. *Illinois v. Fisher*, 540 U.S. 544, 547-48 (2004). However, if a defendant seeks to prove a federal due process violation based on the State's destruction of potentially useful evidence, the defendant must show the State acted in bad faith in destroying the evidence. *Id.*; *Youngblood*, 488 U.S. at 57-58. The *Youngblood* court described potentially useful evidence as "evidentiary material of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant." 488 U.S. at 57.

The evidence lost by the State falls into the category of "potentially useful evidence." While Ramirez argues that the field notes and witness statements might have affected Barclay's conclusions or been useful on cross-examination and that the videotape and motorcycle would have been useful to the accidence reconstruction expert, he can assert only that such evidence *might* have exonerated him. Accordingly, as the evidence is only potentially useful, we analyze the State's failure to preserve under *Youngblood*.

*Youngblood* requires a showing of bad faith on the part of the State in failing to preserve potentially useful evidence. 488 U.S. at 57-58. Ramirez, however, does not argue that the failure to preserve evidence was done in bad faith. Rather, he specifically concedes in his brief that the evidence was lost "not because of bad faith, but because of total negligence on the part of the State." Accordingly, Ramirez's second point of error is overruled.

**Due Course of Law**

In his third point of error, Ramirez argues that the State's failure to preserve evidence constituted a violation of his rights under the due course of law provision of the Texas Constitution.

*See* Tex. Const. art. I, § 19.  Defendant argues that the due course of law provision is broader in scope than the federal due process clause, and therefore provides additional protections.

The majority of Texas appellate courts have held that the due course of law provision provides the same level of protection as the due process clause.  *See, e.g., McGee v. State*, 210 S.W.3d 702, 705 (Tex. App.—Eastland 2006, no pet.) (applying federal due process standards to due course of law challenge involving State's destruction of evidence); *see also Martinez v. State*, No. 13-06-665-CR, 2008 Tex. App. LEXIS 515, at *27 n.13 (Tex. App.—Corpus Christi, Jan. 24, 2008, pet. ref'd) (mem. op., not designated for publication) (indicating that Texas Supreme Court and "eight other Texas courts of appeals have held that the Due Course of Law Clause does not provide a greater level of protection than the Due Process Clause regarding the state's loss of loss or destruction of evidence in a criminal prosecution").  Consequently, most Texas courts have concluded that a defendant claiming his due course of law rights have been violated by the State's failure to preserve evidence must, under *Youngblood*, show bad faith on the part of the State.  *See Mahaffey v. State*, 937 S.W.2d 51, 53 (Tex. App.—Houston [1st Dist.] 1996, no pet.) ("[T]o establish that the failure to preserve the videotape constitutes a violation of due process or due course of law rights, appellant must demonstrate the police erased the videotape in bad faith."); *State v. Rudd*, 871 S.W.2d 530, 532-33 (Tex. App.—Dallas 1994, no pet.) (relying on "*Youngblood* standard to determine violations of article I, section 19 of the Texas constitution when the State does not preserve potentially useful evidence").

One Texas court has deviated from the *Youngblood* standard.  In *Pena v. State*, the Waco Court of Appeals held that a due course of law violation may be found on the basis of the

State's negligent failure to preserve potentially useful evidence. 226 S.W.3d 634, 651 (Tex. App.—Waco 2007), *rev'd on other grounds*, 285 S.W.3d 459, 465 (Tex. Crim. App. 2009) (holding due course of law complaint was not properly preserved for appellate review). The *Pena* court, looking to the Delaware Supreme Court for guidance, considered three factors when examining a due course of law claim based on failure to preserve evidence: "(1) would the evidence have been subject to discovery or disclosure; (2) if so, did the state have a duty to preserve the evidence; (3) if there was a duty to preserve, was that duty breached, and what consequences should flow from the breach." *Id.* (citing *Deberry v. State*, 457 A.2d 744, 750 (Del. 1983)).

Ramirez urges this court to adopt the standard set forth in *Pena*. However, no matter which standard we apply, the result is the same.[7] As discussed above, as Ramirez does not argue that the State acted in bad faith. Consequently, application of the *Youngblood* standard defeats his claim of a violation of his due course of law rights.

Similarly, Ramirez fails to meet the requirements of *Pena*. Regarding the first two factors, as the evidence was potentially useful to the defense and therefore discoverable, the State had a duty to preserve it. *See id.*; *see also Deberry*, 457 A.2d at 751 n.5, 751-52 (citing *Brady v. Maryland*, 737 U.S. 83 (1963) and *United States v. Agurs*, 427 U.S. 97 (1976)) (holding that evidence with potential exculpatory value is discoverable and that "the State's duty to disclose

---

[7] We note that at least one other of our sister courts has applied both *Youngblood* and *Pena* in the absence of a decision from the court of criminal appeals regarding the validity of the *Pena* analysis. *See Martinez v. State*, No. 13-06-665-CR, 2008 Tex. App. LEXIS 515, at *29 (Tex. App.—Corpus Christi, Jan. 24, 2008, pet. ref'd) (mem. op., not designated for publication) ("Without adopting the holding in *Pena*, we will apply the court's analysis due to the possibility the Court of Criminal Appeals may decide to adopt the *Pena* [reasoning].").

19

evidence includes a duty to preserve it as well"). However, Ramirez is unable to meet the requirements of the third factor, which analyzes the consequences of the State's failure to preserve evidence by considering three elements: (1) the degree of negligence or bad faith involved, (2) the importance of the lost evidence, and (3) the sufficiency of the other evidence adduced at trial to sustain the conviction. *Pena*, 226 S.W.3d at 651 (citing *Deberry*, 457 A.2d at 752).

The degree of negligence or bad faith in this case is minimal. As noted above, Ramirez offers no proof of bad faith with regard to the State's failure to preserve evidence. According to the testimony of Barclay, the field notes and witness statements were lost due to flooding during Hurricane Rita, the videotape was destroyed due to a malfunctioning VCR, and Balderrama's motorcycle was released to a towing company, after which the police did not trace its whereabouts. While the loss of this evidence was regrettable, these facts do not exhibit a high degree of negligence on the part of the State. Accordingly, the first element weighs against a due course of law violation.

With regard to the importance of the lost evidence, the loss of Barclay's field notes was mitigated by the trial court's limitation of Barclay's testimony to his recollections of the scene and his conclusions about the cause of the accident, as well as defense counsel's opportunity to cross-examine him. While the missing witness statements may have been helpful for the purposes of impeaching eyewitnesses, defense counsel had the opportunity to fully cross-examine each witness who testified.[8] Though the videotape of the scene was destroyed, there were photographs

---

[8] The defense also had every opportunity to investigate the case to find comparable information, yet there is no record that the defense sought to conduct its own witness interviews or that witnesses refused to cooperate with such efforts. There was also an indication in the record that

20

taken of the scene on the night of the accident that were preserved. With regard to the motorcycle, the defendant retained an experienced accident reconstruction expert, David Lysek, who was able to opine regarding the cause of the accident despite the missing vehicle (or field notes). The second element weighs against a due course of law violation.

In addition, despite the loss of the items described above, the State had sufficient evidence to convict Ramirez. The State's evidence included eyewitness testimony of the collision, testimony from the officers who investigated the scene, testimony regarding Ramirez's level of intoxication, a Major Accident Packet prepared by DPS, a diagram of the scene, and photographs of the scene and the vehicles involved. The jury convicted Ramirez based on this evidence, despite the court's instruction permitting an inference that missing evidence would be favorable to the defense. These facts support the conclusion that the missing evidence was not "critical to whether the State could establish [the defendant's] guilt beyond a reasonable doubt." *Martinez*, 2008 Tex. App. LEXIS 515, at *31-32. The third element weighs against a due course of law violation.

Balancing these elements, we hold that Ramirez fails to meet the requirements set forth in *Pena*. Consequently, no matter which standard we apply, Ramirez has failed to establish a due course of law violation. Ramirez's third point of error is overruled.

---

an insurance carrier had investigated the matter, as the prosecutor impeached Joe Ramirez's testimony at the guilt/innocence phase of the trial with a statement made to an insurance investigator on March 12, 2007. The record is silent as to whether the defense sought to obtain statements made to the insurance carrier investigating the accident.

## CONCLUSION

As we sustain Ramirez's first point of error regarding ineffective assistance of counsel during sentencing, we affirm his conviction, reverse that portion of the judgment assessing punishment, and remand to the trial court for a new punishment hearing.

_____

Diane M. Henson, Justice

Before Chief Justice Jones, Justices Waldrop and Henson

Affirmed in part; Reversed and Remanded in part

Filed:   November 18, 2009

Publish