# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-11-00554-CR

**Christopher Sterling Sims, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF BELL COUNTY, 426TH JUDICIAL DISTRICT
### NO. 66,168, HONORABLE FANCY JEZEK, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Appellant Christopher Sterling Sims was convicted by a jury of burglary of a habitation with the intent to commit a felony, to wit: aggravated assault with a deadly weapon. *See* Tex. Penal Code Ann. §§ 22.02, 30.02(d) (West 2011). After finding that Sims had two previous felony convictions, the jury assessed punishment at life imprisonment. *See id.* § 12.42(c)(1) (West 2011). On appeal, Sims argues that the trial court erred in denying his motion for new trial based on his claim of ineffective assistance of counsel. We affirm the trial court's judgment of conviction.

## BACKGROUND

On the morning of November 5, 2009, Sims entered the bedroom of his former girlfriend, Sherell Robinson, who was in bed with her current boyfriend.[1] Sims asked Robinson to

---

[1] The facts recited herein are taken from the exhibits and testimony admitted at trial and at the hearing on the motion for new trial.

get out of bed so they could talk, but Robinson refused and demanded that Sims leave her apartment. Sims quietly left the apartment.

Three to four hours later, Sims broke through Robinson's front door and entered her bedroom, wielding a knife. Sims stabbed Robinson's current boyfriend with the knife, but the knife broke after one strike. Sims went into Robinson's kitchen and began rummaging through her cabinets. He returned to the bedroom carrying a hammer and proceeded to strike Robinson in the face with it. Sims then went back to the kitchen, retrieved a knife, returned to the bedroom, and stabbed Robinson sixteen times, despite her pleas to stop. Sims dropped the knife, took Robinson's keys, stole her car and drove away. Robinson attempted to call 9-1-1, but became too weak due to blood loss. A neighbor assisted Robinson, and EMTs arrived on the scene. Robinson was taken to a nearby hospital where she was treated for her life-threatening injuries.

Officers with the Temple Police Department arrived at Robinson's apartment shortly before the EMTs. Robinson told officers that her assailant had stolen her car. After she was taken to the hospital, the officers spoke with several witnesses who identified Sims as the man who had taken Robinson's car. Three hours later, Sims was stopped while driving Robinson's car by deputies with the Milam County Sheriff's Office. Sims attempted to flee on foot but was apprehended and arrested by deputies on the scene.

Sims was subsequently charged with burglary of a habitation with the intent to commit a felony therein, to wit: aggravated assault with a deadly weapon. *See id.* §§ 22.02, 30.02(d). The trial lasted three days. The State called seven witnesses, including Robinson, the investigating officers, the nurse who treated Robinson's injuries, and a forensic expert. Sims's trial counsel did

2

not call any witnesses for the defense. The jury convicted Sims of the offense as charged. At the punishment hearing, the jury found that Sims had been previously convicted of two felonies, and assessed punishment at life imprisonment. *See id.* § 12.42(c)(1) (enhancing punishment for first-degree felony to life or between ninety-nine and fifteen years' imprisonment if defendant has prior felony conviction).

Sims retained new counsel and filed a motion for new trial, alleging that he was denied effective assistance of counsel at trial. After conducting a hearing, the trial court denied Sims's motion for new trial. This appeal followed. In his sole issue on appeal, Sims claims that the trial court erred in denying his motion for new trial.

**STANDARD OF REVIEW**

We review the trial court's denial of a motion for new trial for abuse of discretion. *See State v. Herndon*, 215 S.W.3d 901, 907 (Tex. Crim. App. 2007). Therefore, "when analyzing the trial court's failure to grant a motion for new trial on the basis of ineffective assistance of counsel, we view the relevant legal standards through the prism of abuse of discretion." *Ramirez v. State*, 301 S.W.3d 410, 415 (Tex. App.—Austin 2009, no pet.) (citing *State v. Gill*, 967 S.W.2d 540, 542 (Tex. App.—Austin 1998, pet. ref'd)). A trial court abuses its discretion only when no reasonable view of the record would support the trial court's ruling. *Holden v. State*, 201 S.W.3d 761, 763 (Tex. Crim. App. 2006).

Sims has the duty to bring forth a record that affirmatively demonstrates the alleged ineffectiveness of his counsel by a preponderance of the evidence. *See Scheanette v. State*, 144 S.W.3d 503, 509-10 (Tex. Crim. App. 2004). In order to prevail on a claim of ineffective

3

assistance of counsel, a defendant must satisfy the two-prong test set out in *Strickland v. Washington*. 466 U.S. 668, 687 (1984); *see also Hernandez v. State*, 726 S.W.2d 53, 57 (Tex. Crim. App. 1986) (adopting *Strickland* standard for claims of ineffective assistance of counsel). Under *Strickland*, a defendant must show (1) that the counsel's performance was deficient and (2) that the defendant was prejudiced by the deficient performance. 466 U.S. at 687. Counsel's performance is deficient when it falls "below an objective standard of reasonableness" based upon "prevailing professional norms." *Id.* at 689; *see also Perez v. State*, 310 S.W.3d 890, 893 (Tex. Crim. App. 2010). An accused is not entitled to errorless or perfect counsel. *See Robertson v. State*, 187 S.W.3d 475, 483 (Tex. Crim. App. 2006). Therefore, counsel's effectiveness is assessed from the perspective at trial, "without the distorting effects of hindsight." *See Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005). Our review of counsel's performance must be highly deferential. *Strickland*, 466 U.S. at 689. We presume that counsel makes all significant decisions in the exercise of reasonable judgment. *Id.*

**DISCUSSION**

In this case, Sims asserts that he received ineffective assistance of counsel because his trial counsel failed to impeach Robinson's testimony. At the hearing on the motion for new trial, Sims introduced evidence that, at the time of her testimony in this case, Robinson was on deferred adjudication community supervision for a felony theft charge. *See* Tex. Penal Code Ann. § 31.03(e)(4) (West 2011) (making theft between $1,500 and $20,000 a state-jail felony). Sims asserts that Robinson's deferred adjudication community supervision could have been used to impeach her credibility, both because theft shows a character for untruthfulness and because her placement on deferred adjudication community supervision could show bias in favor of the State. *See* Tex. R. Evid. 607, 608(b).

4

At the hearing on the motion for new trial, Sims's trial counsel stated that he was aware of Robinson's deferred adjudication for theft, and that he was aware that he was permitted to impeach Robinson's testimony on that basis. When asked why he chose not to impeach Robinson's testimony, Sims's trial counsel stated that:

> I did consider it. And I felt like the testimony of [Robinson's] stab wounds, and the blood, and what she was testifying happened wasn't a biased or prejudiced type of testimony. And I felt like to bring [bias] up and attack her about it, deferred on theft, knowing my client's criminal record, I thought would be a very poor trial strategy.

At trial, Robinson testified about the events of the burglary and the violent assault. Her testimony was corroborated by other witnesses, including the witness who saw Sims drive away in Robinson's car, the officers who investigated the crime, the expert who testified about Robinson's injuries, and the forensic expert who testified that both the knife recovered from the scene and Sims's jeans tested positive for blood that matched Robinson's DNA. In light of the fact that Robinson's narration of the assault was corroborated by other witnesses, Sims's trial counsel could reasonably have concluded that trying to impeach Robinson's credibility based on her deferred adjudication for theft would not have been effective. *See Cuellar v. State*, Nos. 05-04-01226-CR & 05-04-01227-CR, 2005 Tex. App. LEXIS 5597, at *16–18 (Tex. App.—Dallas July 19, 2005, pet. dism'd) (mem. op., not designated for publication) (holding that counsel's decision not to impeach corroborated testimony was sound trial strategy).

Furthermore, Sims's trial counsel stated that he did not discuss Robinson's deferred adjudication for theft because of Sims's own criminal record. Sims's trial counsel stated that he

5

knew "the jury was going to be aware of my own client's criminal convictions in sentencing," and was concerned that asking the jury for leniency after questioning the victim about her outstanding theft charge "would have been poor trial strategy." Thus, Sims's trial counsel determined that it was not worth impeaching Robinson's testimony based on her theft charge because it risked alienating the jury. Based on this testimony, the trial court could have reasonably concluded that Sims's trial counsel's decision not to impeach the victim of an assault based on her outstanding theft charge was reasonable trial strategy. *See Strickland*, 466 U.S. at 687; *see also Rockwood v. State*, 524 S.W.2d 292, 293 (Tex. Crim. App. 1975) (holding that counsel's decision not to cross-examine victim because "did not want to antagonize the jury" was sound trial strategy); *Ponce v. State*, 901 S.W.2d 537, 541 (Tex. App.— El Paso 1995, no pet.) (noting that not impeaching victim of assault can be sound trial strategy). Therefore, we find that the trial court did not abuse its discretion in denying Sims's motion for new trial. *Ramirez*, 301 S.W.3d at 415. Sims's sole point of error is overruled.

**CONCLUSION**

We affirm the trial court's judgment.

_____

Diane M. Henson, Justice

Before Justices Puryear, Henson, and Goodwin

Affirmed

Filed:   July 18, 2012

Do Not Publish

6