# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-15-00316-CR

**Heather Lauren Richards, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF COMAL COUNTY, 207TH JUDICIAL DISTRICT
### NO. CR2014-091, HONORABLE DIB WALDRIP, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury found appellant Heather Lauren Richards guilty of attempted capital murder, *see* Tex. Penal Code §§ 19.03, 15.01, aggravated kidnapping, *see id.* § 20.04, aggravated sexual assault, *see id.* § 22.021, aggravated robbery, *see id.* § 29.03, and tampering with physical evidence, *see id.* § 37.09. The jury assessed punishment at 50 years' imprisonment for each offense except tampering with physical evidence, for which the jury assessed punishment at 10 years' imprisonment, with all the sentences to run concurrently. In four points of error, Richards contends that she was denied due process when the trial court compelled three of her codefendants to testify at her trial, that she was denied effective assistance of counsel, and that the trial court abused its discretion in admitting certain evidence. We will affirm the trial court's judgments of conviction.

Richards became convinced that Dana Huth, the victim in this case, was in a sexual relationship with Richards's boyfriend, Travis Nealon (also known as T-Bone). Richards confronted Huth about the relationship at the home of Mike Chapin (also known as Big Mike or Uncle Mike). Kayla Lardieri, Sheena Hopkins, Trace Smith, and Big Mike were also present in the home during the encounter. Richards, Lardieri, and Hopkins went to a back room, and Chapin asked Huth to go speak with them.

When Huth entered the room, Richards and Lardieri began to question her about her relationship with T-Bone. When Huth refused to answer, Richards struck her in the face. Richards and Lardieri then ordered Huth to take off all of her clothes so that they could check for hidden recording devices. Lardieri wrapped her hand in a shirt and inserted it into Huth's vagina, but no recording devices were found. Richards and Lardieri removed Huth's possessions and began striking her and stabbing and cutting her with knives, and Richards kicked Huth in the ribs. When Huth tried to flee from the room, she was pulled back inside. Richards also used a stun gun on Huth as many as twenty times. At one point, Richards cut the back of Huth's neck and asked her, "Where is your God now?" Lardieri later testified, "It looked like [Richards] was trying to cut her head off."

When Smith heard Huth screaming, he went to the back room, pointed a shotgun in Huth's face, and "told her to shut the fuck up." Richards and Lardieri realized that Huth's breathing had slowed, and they informed Smith that Huth was "bleeding out." The group then tried to decide how to dispose of Huth. Big Mike suggested taking her body to a pig farm because the pigs would

---

[1] The facts recited herein are taken from the testimony and other evidence presented at trial.

eat her, "bones, everything." Richards suggested burning her body. In the end, the group gagged Huth, blindfolded her, handcuffed her, shackled her feet, and hogtied her with her hands behind her back. They then wrapped her in a sheet, carried her outside, and locked her in a shed. It was December and was freezing outside, and Huth was naked except for the sheet.

Once inside the shed, Huth was able to free her hands and remove the gag and blindfold. She climbed onto some tables or boxes to reach a window, her feet still shackled together. Huth slid herself out the window and landed on her knees on gravel about six feet below. Huth then quietly crawled across the grass, attempting not to disturb Big Mike's dogs. Huth hid in a neighbor's vehicle, which was unlocked. During the night, she heard someone open the shed and heard a female voice say, "Oh, fuck. She's gone." In the morning, Huth signaled to a neighbor, who called the police. A detective later searched a burn pit and uncovered charred remains of Huth's belongings and of a chain.

At trial, in addition to Huth and other witnesses, Lardieri, Smith, and Hopkins testified concerning Richards's involvement in the offense. The State also presented a videotaped confession in which Richards admitted the following:

- Richards and Lardieri confronted Huth.

- Richards and Lardieri forced Huth to take off her clothes and lie naked on the bed, and Lardieri searched in between Huth's legs.

- Lardieri pressed a knife against Huth's back and Richards pressed a knife against Huth's throat. Richards later saw that Huth was bleeding.

- Richards punched or slapped Huth at least three or four times and kicked her in the ribs.

3

- When Richards and Lardieri saw that Huth's breathing had slowed, they informed Smith. Huth was handcuffed and wrapped up in a sheet.

Morever, the State presented a recording of Huth taken at the hospital while she was being treated as well as recordings of calls Richards made to her mother from jail. The jury found Richards guilty.

During the punishment phase of trial, the State presented additional recorded jail calls in which Richards admitted to her mother that she "beat the shit" out of Huth and got "pretty fucking rough with her." The State also offered, and the trial court admitted over defense counsel's objections, photographs of Richards's home taken after the offense. The jury assessed Richards's punishment, the trial court rendered judgment consistent with the jury's verdicts, and this appeal followed.

## DISCUSSION

### Codefendants' Testimony

In her first point of error, Richards contends that she was "denied due process and the presumption of innocence" because the trial court ordered three codefendants to testify against her but only signed an "Order Requiring Testimony and Granting Use Immunity to Witness" for one of the codefendants. The State responds that Richards failed to preserve this complaint because she did not object to her codefendants' testimony at trial. The State further argues that Richards "has failed to point to any case law that supports her claim that her rights were violated by the admission of compelled testimony from her codefendants under a grant of use immunity." In her reply brief, Richards concedes that her "claims are not preserved under the Texas Rule of Appellate Procedure 33.1(a)" but argues that the "absolute rights" allegedly violated "are so fundamental that they cannot be waived."

4

Even assuming without deciding that the trial court committed constitutional error by requiring the three codefendants to testify and that Richards did not waive this error, we will not reverse the trial court's judgment if we determine beyond a reasonable doubt that the court's error did not contribute to Richards's conviction. *See* Tex. R. App. P. 44.2(a). Here, Richards herself admits in her appellate brief that, even excluding the codefendants' testimony, "the record is seething with evidence for the State to prove its case against Ms. Richards":

> [T]he State had the testimony of the alleged victim, her hospital records, testimony of law enforcement, testimony of witnesses that were there the evening of the incident, testimony of the neutral witnesses that discovered the alleged victim, testimony of a witness who viewed a video of the alleged offense occurring,[2] and even a video confession from Ms. Richards, as well as jail recordings from Ms. Richards implicating her guilt.

Given this overwhelming evidence of Richards's guilt, we conclude beyond a reasonable doubt that any error the trial court may have committed in ordering her codefendants to testify did not contribute to Richards's conviction. Accordingly, we overrule her first point of error.

**Ineffective Assistance of Counsel**

In her second point of error, Richards contends that she received ineffective assistance of counsel. To prevail on an ineffective-assistance-of-counsel claim, a defendant must prove by a preponderance of the evidence that (1) counsel's performance was deficient and (2) counsel's deficient performance prejudiced the defendant. *See Ramirez v. State*, 301 S.W.3d 410, 415 (Tex.

---

[2] The video of the offense was not presented at trial.

5

App.—Austin 2009, no pet.); *see also Strickland v. Washington*, 466 U.S. 668 (1984); *Ex parte Ramirez*, 280 S.W.3d 848, 852 (Tex. Crim. App. 2007).

Richards first contends that she was denied effective assistance of counsel because her trial attorney did not call Amanda Chavira as a witness or seek a continuance to obtain Chavira's presence. Richards argues that "trial counsel's only well-defined trial strategy was to minimize Ms. Richards' conduct, and to paint Ms. Lardieri as the main aggressor, and Ms. Richards contends that direct testimony from Ms. Chavira would have been the most effective way to employ this strategy." Assuming without deciding that her trial counsel's failure to call Chavira was deficient performance, Richards has not demonstrated prejudice by explaining what Chavira's testimony would have been and how it would have benefitted her.[3] Morever, Richards cannot show prejudice in light of the overwhelming evidence of her guilt discussed above. Therefore, her first ineffective-assistance claim fails.

Richards also contends "that her trial counsel was deficient in that he did not discuss with her that he filed the punishment election for the jury to assess her punishment if found guilty." Richards points out that the punishment-election form indicating that Richards elected for the jury to assess punishment does not bear her signature. However, Richards does not cite any authority for the proposition that her signature is necessary for an election of punishment or that the absence of her signature constitutes deficient performance by her attorney.[4] Moreover, her trial counsel averred

---

[3] In her brief, Richards refers to materials in the record of another appeal. She previously filed a motion to supplement the record in this appeal, which this Court denied. Because the materials Richards references are not in the record before us, we will not consider them in our analysis.

[4] We note that a punishment-election form need not be signed by a defendant to be effective. *See Sneed v. State*, 406 S.W.3d 638, 641 (Tex. App.—Eastland 2013, no pet.) (holding that

in an affidavit that he discussed punishment possibilities with Richards, and Richards cites no evidence to the contrary. Therefore, we conclude that the absence of Richards's signature on the punishment-election form does not establish that her counsel's performance was defective.

Finally, Richards contends that her trial counsel's assistance was ineffective because "he did not have a means to prove to the jury that Ms. Richards was probation eligible." More specifically, Richards argues that her attorney failed to verify certain paperwork respecting her application for probation prior to trial. However, as Richards herself points out in her brief, the trial court, defense attorney, and prosecutor "came up with the solution" to the lack of verification outside the jury's presence—Richards's counsel would simply have her application for probation admitted into evidence. Because a solution to this problem, which the trial court characterized on the record as "form error" and not "substantive," was reached, Richards cannot demonstrate prejudice from her counsel's allegedly deficient performance. Moreover, given the severity of the crimes of which the jury found Richards guilty, the likelihood that Richards would have received probation is remote.

For these reasons, we conclude that Richards has failed to demonstrate that she received ineffective assistance of counsel, and we overrule her second point of error.

**State's Exhibit 70**

In her third point of error, Richards contends that the trial court abused its discretion in admitting State's Exhibit 70, an audio recording taken at the hospital while Huth was receiving

___

punishment-election form signed by defendant's counsel complied with election requirements of Tex. Code Crim. Proc. art. 37.07, § 2(b)). Richards's attorney did sign the election form, and Richards did not object to having the jury assess her punishment.

treatment. In this recording, Huth can be heard speaking with medical personnel and groaning in pain. Richards argues that this recording contains inadmissible hearsay. The State responds that the exhibit was admissible because it was an excited utterance under Texas Rule of Evidence 803(2).[5]

Even if we assume without deciding that the trial court should have excluded this exhibit, we must disregard this error unless it affected Richards's substantial rights. *See* Tex. R. App. P. 44.2(b). "A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict." *Schmutz v. State*, 440 S.W.3d 29, 39 (Tex. Crim. App. 2014). "Substantial rights are not affected by the erroneous admission of evidence if, after examining the record as a whole, we have fair assurance that the error did not influence the jury, or had but slight effect." *Campbell v. State*, 382 S.W.3d 545, 553 (Tex. App.—Austin 2012, no pet.).

As discussed above, the evidence of Richards's guilt was overwhelming and included a videotaped confession. Therefore, "we have fair assurance that the error did not influence the jury, or had but slight effect." *Id.* at 553; *see Neal v. State*, 256 S.W.3d 264, 285 (Tex. Crim. App. 2008) (concluding that trial court's error "was harmless in light of the overwhelming evidence of guilt shown by other evidence"). Because we cannot conclude that any error the trial court may have committed in admitting State's Exhibit 70 affected Richards's substantial rights, we overrule her third point of error.

---

[5] We review a trial court's ruling on the admissibility of evidence for an abuse of discretion. *See Jessop v. State*, 368 S.W.3d 653, 666 (Tex. App.—Austin 2012, no pet.). "Such rulings will rarely be disturbed by an appellate court." *Id.* We will uphold the trial court's decision "unless it lies outside the zone of reasonable disagreement," and "[i]f the record supports the trial court's decision . . . there is no abuse of discretion." *Id.*

**Photographs**

In her fourth point of error, Richards contends that the trial court abused its discretion in admitting photographs of Richards's home during the punishment phase of trial. These photographs were taken after Richards was arrested and show firearms, ammunition, and pornography in close proximity to children's items such as a pacifier and bassinet. According to Richards, these photographs were irrelevant and any probative value they may have had was outweighed by their prejudicial effect on the jury.

Assuming without deciding that the trial court erred in admitting these photographs, we must consider whether this error affected Richards's substantial rights. *See* Tex. R. App. P. 44.2(b). Although the photographs may have had some prejudicial effect on the jury because they suggested that Richards was a poor mother or that she endangered children, other evidence before the jury demonstrated the severity of the crimes she allegedly committed, including graphic photographs of Huth's injuries and descriptions of the offense by Huth and other witnesses. Moreover, during the punishment phase of trial, the State presented jail calls in which Richards told her mother that she "beat the shit" out of Huth and got "pretty fucking rough with her." During these calls, Richards exhibits no remorse for her actions. Given this evidence, we cannot conclude that the admission of the photographs of Richards's home "had a substantial and injurious effect or influence in determining the jury's verdict." *Schmutz*, 440 S.W.3d at 39. Accordingly, we overrule Richards's fourth point of error.

## CONCLUSION

We affirm the judgments of conviction.

9

_____

Scott K. Field, Justice

Before Justices Puryear, Goodwin, and Field

Affirmed

Filed:   August 11, 2016

Do Not Publish

10