# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-11-00256-CR

**Donald John Noland, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF BELL COUNTY, 426TH JUDICIAL DISTRICT
### NO. 63702, HONORABLE FANCY H. JEZEK, JUDGE PRESIDING

## MEMORANDUM OPINION

Appellant, Donald John Noland, was charged with aggravated sexual assault of a child younger than fourteen years of age. *See* Tex. Penal Code Ann. § 22.021 (West Supp. 2011). Noland waived his right to a jury trial and entered a plea of not guilty. The trial court found Noland guilty and assessed punishment at forty years' imprisonment. Noland appeals, asserting that he was denied effective assistance of counsel. We affirm the trial court's judgment.

## BACKGROUND

The victim in this case, K.B., is Noland's stepdaughter.[1] In the spring of 2008, K.B. was twelve years old and lived with her mother, Shawna Noland; her brother; her stepfather, Noland; and Noland's mother and nephew.[2] One day that spring, K.B. confided to two friends at school that

---

[1] The facts recited herein are taken from the testimony and exhibits presented at trial.

[2] Because K.B.'s mother, Shawna Noland, shares the same surname as the appellant, we will refer to her by her first name for clarity.

Noland was having sex with her every weekend when her mother was away. K.B.'s friends decided to notify the school counselor, Kim Vaughn, about what K.B. had said. Vaughn spoke with K.B. and then made a report to Child Protective Services (CPS). After interviewing K.B. and her parents and visiting their home, a CPS investigator contacted the Temple Police Department. A sexual assault nurse examiner examined K.B., and a staff member at the Child Advocacy Center (CAC) interviewed K.B. K.B. was subsequently removed from the home, and on September 24, 2008, Noland was indicted for aggravated sexual assault of a child younger than fourteen.

At the bench trial, the State presented testimony as to K.B.'s outcry and the resulting investigation. CPS investigator Jana Jordan testified about her interview with K.B., stating that K.B. reported multiple instances of sexual abuse by Noland. Jordan also testified that she interviewed K.B.'s mother, Shawna, who did not seem to believe her daughter about the abuse. Jordan then recalled interviewing Noland. She testified that Noland denied any sexual intercourse with K.B. but did describe an incident when K.B. demanded to try on some lingerie Noland had purchased for his wife. According to Jordan, Noland said he permitted K.B. to try on the lingerie. Noland said he sent K.B. into another room, but she came back wearing the lingerie. However, Noland said he could not see K.B.'s body underneath the lingerie because it was not "see-through." Jordan testified that Noland admitted telling K.B. not to tell anyone about the lingerie or he might be arrested.

Jordan also testified about visiting K.B.'s home. She stated that she found some lingerie made of black netting, which did not match Noland's description of the lingerie tried on by K.B., but also did not look large enough to fit Shawna. Jordan said that K.B. identified the lingerie as "a sex outfit that her stepfather had bought for her" and also showed Jordan a vibrator that she

2

claimed Noland had given her. Photos of the items Jordan found were admitted into evidence. The lingerie and a bottle of lubricant, which were collected by the police, were also admitted. The State asked Jordan what findings CPS made in closing its case on Noland. Jordan replied that Noland's case was classified as "reason to believe," which meant that CPS "validated him for sexual abuse."

K.B.'s friend, J.G., was then called by the State. She testified that K.B. was crying when she told her friends about Noland having sex with her. J.G. recalled alerting the school counselor to K.B.'s claims. The counselor, Vaughn, also testified, describing the conversation she had with K.B. after being approached by K.B.'s friends.[3] According to Vaughn, K.B. told her that on weekends when her mother would go out, K.B. would spend time in her mother's bedroom on the computer, and her stepfather would come in and have sex with her. Further, K.B. said that Noland threatened to shoot himself if she told anyone about these incidents.

The State then called K.B. to testify. K.B. stated that, in October of her seventh-grade year, she had to go to a psychiatric hospital because she was cutting herself. K.B. explained that she had been depressed because her mother was inattentive and that she was also in the hospital for acting out sexually, such as showing her breasts to boys at school. K.B. testified that she had told hospital staff she heard voices telling her to touch herself. However, she admitted that this was a lie she had told to get attention.

After leaving the hospital, K.B. gave an interview at the CAC about an event that occurred before her hospitalization. According to K.B., while sleeping over at a friend's house, K.B.

---

[3] Vaughn was the designated "outcry witness" called by the State. *See* Tex. Code Crim. Proc. Ann. § 38.072 (West 2005). At the outset of Vaughn's testimony, Noland's attorney stated that he would object to hearsay if any additional "outcry" witnesses were called. The State indicated that Vaughn was the only one.

3

followed the friend's older brother to his room and had sex with him. She claimed this happened in June 2006, when she was eleven years old and the boy was fifteen or sixteen. K.B. testified that Noland had learned about this event and therefore knew that she "wasn't a virgin."

K.B. then testified that, sometime after she left the hospital but before she told the CAC about her friend's brother, Noland began having sex with her. K.B. claimed that, while she was using the family computer, Noland would come into the room drinking alcohol and would offer her some. After she would drink the alcohol, K.B. testified, Noland would touch K.B.'s breasts over her clothing. Later, Noland would touch K.B.'s "vagina area and [her] butt" with "his dick." K.B. added, "The vagina area was with his tongue, too." She also testified that Noland had put his penis "in [her] mouth and in [her] butt," which "hurt." K.B. testified that Noland applied "some type of lotion," which was a yellow-colored gel from a small container, onto his penis. She recalled showing the container to the detective who visited her house.

K.B. stated that the abuse began before Christmas 2007, when Noland's mother and nephew moved into the home, and continued while they lived there. K.B. testified that Noland threatened to kill himself if she told anyone what was happening, which was why she did not initially tell her therapist or anyone at the CAC. She stated that the last time Noland had sex with her was the weekend before she returned to the CAC to talk about him.

K.B. also testified as to various items that Noland gave her. She described one piece of lingerie that was black and full of holes. K.B. denied asking to try this lingerie on, stating instead that Noland asked her to try it on and she agreed. K.B. said Noland took photos of her wearing it. When asked about the vibrator photographed by CPS, K.B. admitted that Noland did not give it to

4

her.  She testified that she took that vibrator from Noland's closet.  However, K.B. stated that there was another vibrator, originally her mother's, that Noland did give to her.

On cross-examination, K.B. admitted that she had told lies in the past.  She admitted to telling CPS that Noland began abusing her between Christmas 2007 and spring break of 2008, whereas she had just testified that the abuse began before Christmas 2007.  K.B. also admitted that she previously gave the prosecutor a different date—sometime around her birthday, May 2—as the last instance of the abuse.  K.B. admitted to telling several lies in the psychiatric hospital, including that she heard voices, had visions when she looked in the mirror, belonged to a gang, and drank pig's blood.  However, on redirect examination, K.B. testified that she was merely confused about the dates when she was abused and had not been purposely untruthful in that regard.

Next, the State questioned sexual assault nurse examiner Debra Kleypas.  After stating her qualifications, Kleypas testified that the history she took from K.B. indicated that K.B. was sexually abused by her stepfather.  However, the examination revealed no physical evidence of abuse.  There was no injury to K.B., which Kleypas testified was probably because K.B. had already undergone puberty, causing changes to her genitals that make injury from sexual intercourse less likely.  In addition, because several days had passed since the last alleged assault and K.B. was menstruating heavily, Kleypas declined to administer a DNA swab.[4]

The State also presented testimony from Gary Richards, a detective at the Temple Police Department.  Richards testified that, in his experience working with children victimized by

---

[4] Kleypas testified that she had determined that a swab would not be effective.  Specifically, she explained that menstruation carries any DNA evidence outside of a woman's body, leaving none for a swab to detect.

physical or sexual abuse, he had seen many exhibit behaviors like physical violence, sexually acting out, and depression. Richards also described accompanying CPS to Noland's house to collect evidence in this case. He agreed that Noland's wife appeared too heavy to wear the black lingerie found by CPS. However, he noted that he had visited the store in Killeen where it was purchased and had learned that it was the largest size the store could offer without placing a special order.

Lastly, Richards recalled conducting a voluntary interview with Noland and asking about the lingerie. According to Richards, Noland claimed that K.B. kept asking to try it on until he let her. However, Noland admitted that the lingerie had nothing over the breast area and that K.B. came out wearing it with nothing underneath. Noland said he told K.B., "Okay, that looks nice[.] Now go take it off." Richards said that Noland also admitted having a conversation with K.B. about gagging during oral sex and about shaving the genital area. However, on cross-examination, Richards agreed that Noland denied any sexual intercourse with K.B. The defense then showed Richards a photo of Shawna wearing lingerie similar to that in evidence over her clothes. Richards admitted that, although it was tight, Shawna did fit into the lingerie.

Finally, the State called Jerry Upshaw, the grandfather who was caring for K.B. in Florida since her removal from the Noland home. Upshaw testified that K.B. had become a "fine child" who earned A's and B's in her classes and played on the school basketball team. Upshaw stated that K.B. had been in counseling until recently but had not been on any medication since moving to Florida. When asked if K.B. had problems with boys, Upshaw stated that "most teenagers are boy crazy" and K.B. "just seemed to be a little excessive." He added that K.B. had no problems with alcohol or drugs that he knew of. According to Upshaw, K.B. sometimes told lies or fibs, but

6

usually with regard to "internet use that she wasn't supposed to do . . . . We had issues where she would stay up late at night and get on the internet when she shouldn't have been." Overall, Upshaw said, K.B. was "a normal teenager."

For the defense, K.B.'s mother Shawna was called to testify. She disputed some of K.B.'s statements. For instance, Shawna testified that the bottle of lubricant in evidence belonged to her and Noland and had been empty for years. "We don't throw away our bottles right offhand," she explained. "We [wait] until we can actually throw them away when there's not kids around." Shawna also claimed that she went out with friends just once or twice each month, rather than every weekend, as suggested by K.B. Shawna also noted that K.B. first made her outcry shortly after Shawna and Noland, frustrated with K.B.'s grades, canceled a vacation to Florida that K.B. had been anticipating. Shawna testified that she believed K.B. was lying about being abused by Noland.

After the close of evidence, the trial court found Noland guilty. The State announced its intent to seek enhanced punishment based on a prior conviction; Noland pleaded not true to the enhancement.[5] After a punishment hearing, the trial court found the enhancement paragraph not true. The court then sentenced Noland to forty years' imprisonment and ordered him to pay court costs.

Subsequently, Noland's trial counsel withdrew from the case and Noland obtained new counsel, who filed a motion for new trial. The motion alleged that Noland had received ineffective assistance of counsel at trial. At a hearing on the motion, Noland called his employer, Kevin Harmon, who testified that he and several other individuals were prepared to testify at

---

[5] The parties stipulated that Noland had received probation for a felony charge of corrupting a minor in Ohio in 1996. Noland's attorney argued that the Ohio probation did not constitute a final conviction under Texas law and therefore could not be used to enhance punishment in Texas.

Noland's punishment hearing but were never interviewed or called to the stand. Noland also called his trial counsel to testify about his services, and trial counsel testified extensively as to various aspects of the trial and punishment. For instance, trial counsel explained why he did not object to certain testimony, how he used K.B.'s medical records, and his strategy at the punishment hearing. Finally, Noland submitted several affidavits concerning trial counsel's work on the case.

Following the hearing, the trial court denied Noland's motion. Noland now appeals, claiming that defense counsel provided ineffective assistance in numerous respects.

## STANDARD OF REVIEW

We review the denial of a motion for new trial for an abuse of discretion. *Charles v. State*, 146 S.W.3d 204, 208 (Tex. Crim. App. 2004). Accordingly, when analyzing the trial court's decision to deny a new trial based on ineffective assistance of counsel, we view the relevant legal standards through the prism of an abuse-of-discretion standard. *See Ramirez v. State*, 301 S.W.3d 410, 415 (Tex. App.—Austin 2009, no pet.). We do not substitute our judgment for that of the trial court; rather, we decide whether the trial court's decision was arbitrary or unreasonable. *Charles*, 146 S.W.3d at 208. We must view the evidence in the light most favorable to the trial court's ruling and presume that all reasonable factual findings that could have been made against the losing party were so made. *Id.* Thus, a trial court abuses its discretion in denying a motion for new trial only when no reasonable view of the record could support the trial court's ruling. *Id.*

To prevail on a claim of ineffective assistance of counsel, a defendant must show by a preponderance of the evidence that (1) counsel's representation fell below an objective standard of reasonableness under the prevailing professional norms and (2) the deficient performance

8

prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Hernandez v. State*, 726 S.W.2d 53, 57 (Tex. Crim. App. 1986). An appellant's failure to satisfy one prong of the *Strickland* test negates a court's need to consider the other prong. *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001) (citing *Strickland*, 466 U.S. at 697). With regard to the first prong of the analysis, we consider all of the circumstances with a "strong presumption that counsel's performance fell within the wide range of reasonably professional assistance." *Robertson v. State*, 187 S.W.3d 475, 484 (Tex. Crim. App. 2006) (citing *Strickland*, 466 U.S. at 689). A defendant must show that no reasonable trial strategy could justify counsel's conduct. *Strickland*, 466 U.S. at 689; *State v. Bounhiza*, 294 S.W.3d 780, 783 (Tex. App.—Austin 2009, no pet.).

To prove prejudice, a defendant must show that there is a reasonable probability, or a probability sufficient to undermine confidence in the outcome, that the result of the proceeding would have been different. *Id*. at 694. "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693. Rather, he must show that "there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 695.

A *Strickland* claim must be "firmly founded in the record, and the record must affirmatively demonstrate" the meritorious nature of the claim. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). Direct appeal is usually an inadequate vehicle for raising ineffective-assistance claims because the record is generally underdeveloped. *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005). The record in this case, however, is more developed on direct appeal because of the hearing held on Noland's amended motion for new trial. The hearing featured testimony of defense counsel and affidavits from multiple witnesses.

9

## DISCUSSION

In a single point on appeal, Noland argues that defense counsel rendered ineffective assistance of counsel. In a list of eleven "examples" of ineffective assistance, Noland essentially complains about seven aspects of his trial counsel's performance. Noland claims his attorney was ineffective because he: (1) failed to object to testimony, including testimony from the designated outcry witness in the case, that was inadmissible as hearsay; (2) failed to obtain disciplinary records of the complaining witness; (3) failed to object to testimony by a CPS investigator expressing an opinion on the ultimate question; (4) presented the court with medical records prejudicial to Noland instead of presenting, arguing, or cross-examining witnesses using beneficial medical records; (5) failed to investigate a prior allegation by the complaining witness that would have discredited her; (6) provided erroneous advice regarding the need for mitigation evidence before the court ruled on an enhancement count at punishment; and (7) failed to interview potential defense witnesses or present their testimony at punishment. We will examine each of these contentions in turn.

### Hearsay testimony

First, we consider Noland's argument that he received ineffective assistance because his trial counsel failed to object to testimony presented by Vaughn, the designated outcry witness, as well as CPS investigator, Jordan, and K.B.'s friend, J.G. Noland argues that counsel should have objected to Vaughn's testimony concerning statements made by K.B. as hearsay because the State failed to meet the statutory prerequisites for admissibility of outcry witness testimony. *See* Tex. Code Crim. Proc. Ann. art. 38.072 (West 2005). Likewise, Noland argues that counsel should have objected to testimony from Jordan and J.G. about statements made by K.B as hearsay. In

10

response, the State asserts, and we agree, that Noland has failed to rebut the strong presumption that counsel's performance fell within the wide range of reasonably professional assistance. *See Robertson*, 187 S.W.3d at 483.

As a general rule, hearsay is not admissible unless it falls within an exception provided by statute or the rules of evidence. *See* Tex. R. Evid. 802. Article 38.072 of the code of criminal procedure creates a hearsay exception for certain statements made by a child victim of certain sexual offenses to the first person over the age of eighteen. *See* Tex. Code Crim. Proc. Ann. art. 38.072. However, for such "outcry witness" testimony to be admissible, the State must notify the defendant of its intent to offer the outcry statement in advance of trial by following the notification requirements of article 38.072. *Id*. art. 38.072(2)(b)(1). Further, a trial court must find, in a hearing conducted outside the presence of the jury, that the statement is reliable based on time, content, and circumstances of the statement. *Id*. art. 38.072(2)(b)(2).

In this case, the State designated Vaughn as the outcry witness, and Noland does not contend that the State in any way failed to properly notify him of its intention to present Vaughn as an outcry witness under article 38.072. *See* Tex. Code Crim. Proc. Ann. art. 38.072(2)(b)(1). Rather, Noland contends that Vaughn's testimony concerning K.B.'s outcry is inadmissible hearsay because the court failed to conduct a hearing and find that the outcry statement is reliable. However, to successfully assert that trial counsel's failure to object to Vaughn's testimony as hearsay amounted to ineffective assistance, Noland must show that the trial judge would have committed error in overruling the hearsay objection. *Ex parte Martinez*, 330 S.W.3d 891, 901 (Tex. Crim. App. 2011).

There is nothing in the record that indicates that the court conducted a hearing or made a finding that the outcry statement made to Vaughn is reliable; further, nothing in the record

11

indicates that either party requested such a hearing. However, if trial counsel had objected to Vaughn's testimony as hearsay on the ground that the court had failed to conduct an article 38.072 hearing, it is likely that the court would have then conducted the hearing, to the extent necessary, to determine the reliability of the outcry statement. *See Sanchez v. State*, 354 S.W.3d 476, 488 (Tex Crim. App. 2011) ("Trial courts have great discretion in how they manage their Article 38.072 hearings."). Moreover, Noland fails to show that the court, focusing on the "time, content, and circumstances" of the outcry statement, would have found it to be unreliable. The record before us does not support the conclusion that, upon objection, the trial court would have committed error in ultimately admitting Vaughn's testimony. *See Strickland*, 466 U.S. at 689. Accordingly, we cannot conclude that counsel's failure to object to Vaughn's testimony as hearsay was deficient.

In addition, the record shows that despite having the opportunity at the hearing on the motion for new trial, Noland failed to question trial counsel about his reasons for not objecting to Vaughn's testimony. As a result, counsel was not given an opportunity to explain his actions, and the record is silent as to counsel's reasoning or strategy for not objecting to Vaughn's testimony. *See Goodspeed*, 187 S.W.3d at 392 ("Trial counsel should ordinarily be given an opportunity to explain his acts or omissions before being denounced as ineffective.") *Id*. Where trial counsel's reasons for failing to do something do not appear in the record, the record on direct appeal is generally inadequate to demonstrate deficient performance. *Id*. On the record before us, without knowing the reasons for counsel's decision for failing to object to Vaughn's testimony, we cannot conclude that trial counsel's performance fell below an objective standard of reasonableness. *Id*. (quoting *Garcia v. State*, 57 S.W.3d at 440) ("Absent such an opportunity, an appellate court should not find deficient performance unless the challenged conduct 'was so outrageous that

12

no competent attorney would have engaged in it.'"); *see Lopez v. State*, 343 S.W.3d 137, 143-44 (Tex. Crim. App. 2011) (holding that appellant failed to demonstrate deficiency as to trial counsel's decision to not request an article 38.072 hearing because "the record [was] silent as to why trial counsel failed to object").

Similarly, Noland has failed to establish that no reasonable trial strategy could justify counsel's failure to object to the testimony of Jordan and J.G. *See Strickland*, 466 U.S. at 689. At the hearing on the motion for new trial, counsel testified that he was aware that Vaughn had been designated by the State as the outcry witness. However, according to counsel's testimony, K.B.'s credibility was a primary issue in the case, and he believed the statements of J.G. and Jordan would discredit K.B. by demonstrating conflicts in her different reports of abuse. Consistent with this strategy, counsel cross-examined K.B. with regard to different statements she had made concerning the dates of the alleged abuses. In addition, in closing argument, counsel discussed K.B.'s inconsistent statements, especially with regard to the dates of the alleged occurrences, and her overall inability to tell the truth. Based on trial counsel's testimony at the hearing, the trial court could have reasonably concluded that a sound trial strategy supported his decision not to object to the testimony at issue. *See Strickland*, 466 U.S. at 689; *see also Everett v. State*, No. 04-03-00709-CR, 2005 Tex. App. LEXIS 795, at *20 (Tex. App.—San Antonio Feb. 2, 2005, no pet.) (mem. op.) (holding that ineffective assistance was not proven where counsel testified that he permitted hearsay testimony of additional outcry witnesses in order to show inconsistencies in complainants' statements, even though another attorney might have pursued a different strategy). From the record before us, we cannot conclude that counsel's performance fell below an objective standard of reasonableness.

But even if counsel's performance was deficient, Noland fails to prove that his defense was prejudiced as a result. *See Strickland*, 466 U.S. at 687, 694–95. Noland argues that the testimony of Jordan, J.G., and Vaughn prejudiced Noland's case because the testimony "served only to enhance/bolster [K.B.]'s credibility—the sole issue in the case! There is a reasonable probability that it impacted the fact finder's verdict!" However, Noland has presented no evidence, either in his motion for new trial or at the hearing, that counsel's allegedly deficient performance prejudiced his defense. *See Mitchell v. State*, 989 S.W.2d 747, 748 (Tex. Crim. App. 1999) (explaining that affirmative proof of prejudice is required); *Bazanes v. State*, 310 S.W.3d 32, 43 (Tex. App.—Fort Worth 2010, pet. ref'd) (rejecting prejudice argument similar to Noland's). Instead, the evidence at trial against Noland, even apart from the testimony that Noland now complains was wrongfully admitted, was considerable and supports the court's finding of guilt. *See Everett*, 2005 Tex. App. LEXIS 795, at *20 ("When inadmissible testimony is disregarded, if the remaining evidence is still sufficient to support a jury finding of guilt, then the appellant has failed to show prejudice."). For example, the trial court heard K.B.'s account of ongoing sexual abuse by Noland. The court then heard testimony from her grandfather, Jerry Upshaw, suggesting that K.B. was recovering from her past psychiatric problems, had developed into a normal teenager, and could be trusted on major issues. Conversely, the trial court heard testimony that Noland made multiple, conflicting admissions to discussing sexual acts with K.B. and permitting her to try on lingerie. As the sole judge of the credibility of the witnesses, the trial court could have reasonably concluded from this evidence that the outcome of Noland's trial would not have been different, even if counsel had objected to the testimony of Vaughn, Jordan, and J.G.

14

Viewing the evidence in the light most favorable to the trial court's ruling, Noland has failed to prove both deficiency and prejudice with respect to his claim that counsel should have objected to the testimony of Vaughn, Jordan, and J.G. *See Strickland*, 466 U.S. at 668, 687.

**Presentation of disciplinary records**

Noland also argues that counsel provided ineffective assistance in failing to investigate and present K.B.'s disciplinary records from the alternative school in the Belton Independent School District. However, Noland has not provided the records at issue, with the result that their contents are unknown to this Court. Accordingly, we cannot evaluate whether the records were relevant to Noland's defense or whether any prejudicial effect resulted from their omission at trial. *See Goodspeed*, 187 S.W.3d at 390 (noting that *Strickland* claim must be "firmly founded in the record" and that "the record must affirmatively demonstrate" meritorious nature of claim).

**Opinion testimony on the ultimate issue**

Next, we consider Noland's argument that he received ineffective assistance because counsel failed to object to the CPS investigator's opinion testimony on the ultimate issue. Noland complains that counsel should have objected when Jordan, who was not established as an expert, gave opinion testimony that CPS found "reason to believe" Noland had sexually abused K.B. Noland also claims this testimony "totally usurped the province of the fact finder by providing the answer to the ultimate question." The State contends that Jordan's statement did not constitute an opinion as to K.B.'s truthfulness but rather a confirmation that CPS had found grounds to remove K.B. from her home. However, we need not determine if Jordan expressed an opinion on the ultimate issue, because even if she had, Noland would be unable to show deficient performance in this respect.

15

Rule 701 of the Texas Rules of Evidence provides that a lay witnesses may express opinions if they are "rationally based on the perception of the witness" and "helpful to the clear understanding of the witness's testimony or the determination of a fact in issue." Tex. R. Evid. 701. The record shows that Jordan's testimony was rationally based on her observations while investigating the Noland family on behalf of CPS. *See Ex Parte White*, 160 S.W.3d 46, 53 (Tex. Crim. App. 2004). Further, rule 704 provides that "[t]estimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." Tex. R. Evid. 704; *see Ortiz v. State*, 834 S.W.2d 343, 348 (Tex. Crim. App. 1992) ("'invades the province of the jury' is no longer a valid objection to opinion testimony"). Thus, even if Jordan's statement constituted an opinion, the testimony was admissible under rule 701 and rule 704 of the rules of evidence. Counsel's decision not to object was not even in error, much less an instance of deficient performance. *See Bradley v. State*, 359 S.W.3d 912, 919 (Tex. App.—Houston [14th Dist.] 2012, no pet.); *Cooper v. State*, 707 S.W.2d 686, 689 (Tex. App.—Houston [1st Dist.] 1986, pet. ref'd) ("Counsel's failure to object to admissible testimony does not constitute ineffective assistance of counsel."); *see also Garcia*, 57 S.W.3d at 440.

**Presentation of certain medical records**

Noland further argues that counsel was ineffective in making use of K.B.'s medical records. At trial, all of K.B.'s medical records were admitted as evidence, but defense counsel also presented the court with a shorter excerpt of the records for ease of reference. According to Noland, this excerpt contained documents that were detrimental to Noland, and counsel was therefore deficient in calling attention to it while failing to present, argue, or cross-examine witnesses using

16

other portions of the medical records that were more favorable to the defense. Noland alleges that these errors served to enhance K.B.'s credibility at Noland's expense.

All of K.B.'s medical records, including those reflecting her extensive psychiatric history, were admitted at trial and therefore before the trial court to consider in determining Noland's guilt. Further, the record shows that trial counsel made substantial efforts to discredit K.B. using these records. In fact, counsel cross-examined K.B. about many of the facts recited in the medical records that Noland now claims were favorable to his defense and should have been emphasized. For instance, counsel cross-examined K.B. about her possession of alcohol at school, as well as her history of self-mutilation and acting out sexually. In addition, counsel cross-examined K.B. about the discrepancies in the dates when she claimed to have been abused and about multiple lies she told while hospitalized. In closing argument, counsel directed the court to K.B.'s medical records, arguing that they indicate that K.B. "is a young lady who has had a time being able to tell the truth about things." Thus, the fact that Noland's attorney declined to take any additional approach to discredit K.B. by emphasizing a different portion of her medical records is insufficient to overcome the strong presumption of reasonably professional assistance. *See Strickland*, 466 U.S. at 689. Noland therefore fails to establish deficient representation with respect to K.B.'s medical records. *See id.*

**Prior allegation by K.B.**

Noland next argues that his attorney was deficient in failing to investigate and present the fact that, in K.B.'s prior allegation of sexual assault by her friend's older brother, K.B. originally claimed he had raped her forcibly but later admitted to her mother that she had lied and the encounter was not forcible. Noland claims that this prior allegation and subsequent admission could have been used to discredit K.B. at trial. However, Noland does not establish that his attorney's performance

17

was deficient in this respect. As previously discussed, counsel made significant efforts to impeach K.B.'s credibility at trial. The fact that counsel could have pursued an additional means of discrediting her fails to overcome the strong presumption of that counsel provided reasonable professional assistance. *See generally id.* at 689. Noland fails to prove that he received ineffective assistance regarding this prior allegation by K.B.

**Presentation of evidence prior to enhancement ruling**

Next, we address Noland's complaint concerning counsel's request for the trial court to rule on the enhancement paragraph before the presentation of punishment evidence. Noland's attorney asked the court to rule on the enhancement at the outset of the punishment hearing, reasoning that the automatic life sentence that would result if the court found the enhancement to be true would eliminate the need for further punishment evidence. However, the trial court declined to rule before hearing testimony. Noland asserts that counsel's request reflected a misunderstanding of the applicable law that resulted in ineffective assistance. However, he fails to support this argument with proof of either deficient performance or prejudice.

First, counsel's testimony at the new-trial hearing included an explanation of his strategy in making the complained-of request. At issue before the court was whether Noland's prior charge in Ohio for corrupting a minor could be used to enhance Noland's punishment in the current proceeding. Counsel testified that he did not want the trial court to hear any details of the charge against Noland in Ohio before assessing punishment. According to counsel, he knew that certain witnesses he intended to call were aware of the charge and would have to discuss it if asked by the State. To reduce that possibility, counsel testified, he preferred to question these witnesses once the

18

court had already found the enhancement based on the Ohio conviction not true. Viewed in the light most favorable to the trial court's ruling, this testimony supports a finding by the trial court that a reasonable trial strategy supported counsel's conduct in making the request. *Strickland*, 466 U.S. at 689; *Bounhiza*, 294 S.W.3d at 783.

In addition, even if the request was improper, the trial court declined the request, received evidence in support of Noland, and ultimately found the enhancement not true. After hearing this evidence, the court assessed punishment at forty years' imprisonment, far short of the life sentence it could have imposed under the statutory guidelines. *See* Tex. Penal Code Ann. § 12.32 (West 2011), § 22.021. Consequently, it is unclear how counsel's request or the timing of the ruling in Noland's favor had any negative impact on the outcome of the punishment hearing. *See id.* Noland has not provided affirmative proof of prejudice from any deficient performance by counsel on this issue. *See Mitchell*, 989 S.W.2d at 748; *Bazanes*, 310 S.W.3d at 43. Accordingly, the trial court would have been reasonable to conclude that no prejudice occurred. *See Ramirez*, 301 S.W.3d at 415; *Charles*, 146 S.W.3d at 208.

**Additional punishment witnesses**

Finally, Noland complains that trial counsel should have interviewed additional witnesses, such as Noland's mother, his employer, and various friends and acquaintances of Noland, and presented their testimony at the punishment hearing. Noland sets forth extensive mitigation testimony that he claims these witnesses would have given and concludes that counsel was ineffective for failing to call them to the stand.

After the trial court declined to rule on the enhancement, the defense called two witnesses: a realtor, who testified to Noland's reliability and trustworthiness as a provider of air conditioning repair, and Shawna, who testified as to Noland's family obligations. The defense also introduced three letters in support of Noland. The court then assessed punishment at forty years' imprisonment as described above.

From the record before us, Noland fails to show that no reasonable trial strategy could justify counsel's failure to call the additional witnesses. *See Strickland*, 466 U.S. at 689. As previously discussed, counsel testified at the hearing on the motion for new trial that several of the witnesses were aware of the Ohio charge and would have been able to give details of the charge on cross-examination. Thus, once the court refused to rule on the enhancement prior to hearing evidence, there was a risk that cross examination of these witnesses could influence the court's ruling on the enhancement. By presenting character witnesses by affidavit, counsel successfully avoided this risk. Because this constitutes a reasonably sound strategic motivation, Noland fails to establish that counsel's decision to not call the additional witnesses was outside the range of reasonably professional assistance.

Further, Noland again fails to prove that the alleged error resulted in prejudice to his defense. *See Cash*, 178 S.W.3d at 818 n.6; *Garcia*, 57 S.W.3d at 440. Noland fails to explain how any further testimony would have caused him to receive an even lesser sentence than forty years' imprisonment for aggravated sexual assault of a child. Accordingly, the trial court could have determined that there was no reasonable probability that Noland's punishment would have been different but for counsel's alleged failure to question additional witnesses. *See Strickland*, 466 U.S. at 694.

With respect to each of Noland's "examples" of ineffective assistance of counsel, we have determined that Noland has failed to demonstrate either deficiency, prejudice, or both. *See Strickland*, 466 U.S. at 687; *see also Garcia*, 57 S.W.3d at 440. Moreover, we cannot say that the totality of representation received by Noland fell below an objective standard of professional norms. *See Robertson v. State*, 187 S.W.3d 475, 483 (Tex. Crim. App. 2006). *Cf. Garcia v. State*, 308 S.W.3d 62, 76 (Tex. App.—San Antonio 2009, no pet.) (holding that totality of representation was ineffective where counsel gave erroneous community supervision advice resulting in jury waiver, called defendant to testify about prior bad acts, and failed to realize that applicable statute did not authorize "outcry" testimony as to adult complainant). Consequently, the trial court did not abuse its discretion in denying Noland's motion for new trial. *See Ramirez*, 301 S.W.3d at 415. Noland's sole point on appeal is overruled.

## CONCLUSION

We affirm the trial court's judgment.

_____

Diane M. Henson, Justice

Before Justices Puryear, Henson and Goodwin

Affirmed

Filed: July 20, 2012

Do Not Publish