**Opinion issued April 16, 2015**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-14-00649-CR

———————————

**JOHN ANDREW GARCIA, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 412th Judicial District Court**
**Brazoria County, Texas**
**Trial Court Case No. 73555**

---

## MEMORANDUM OPINION

A jury found Appellant guilty of the offense of aggravated assault[1] and

assessed his punishment at 10 years in prison.  Because the indictment alleged that

---

[1]    *See* TEX. PENAL CODE ANN. § 22.02 (Vernon 2011).

Appellant used a deadly weapon in the commission of the offense, the trial court included an affirmative deadly-weapon finding in the judgment.

On appeal, Appellant raises two issues. He asserts that the evidence was not sufficient to support the judgment and complains that he received ineffective assistance of counsel at trial.

We affirm.

## Background

Rene Arredondo owed Tim McKeel $25 for work McKeel had performed for Arredondo. McKeel went to Arredondo's home to ask for the money. At the time, Arredondo was dismantling a truck in his yard to sell for scrap. Arredondo's brother, Dion, was helping him. Arredondo told McKeel that he would pay him the money in approximately an hour after he scrapped the vehicle. McKeel left and went to his home in a trailer park across the street.

Appellant also lived in the trailer park. Appellant and McKeel returned to Arredondo's yard. Appellant and Dion began to argue. Appellant left and returned to the trailer park. Dion followed Appellant, and the two men continued their argument at the trailer park.

Arredondo also went to the trailer park. As the argument between Dion and Appellant continued, other people also came to the scene, including Arredondo's wife.

Arredondo decided to return home to continue working on the truck. Arredondo's wife was walking in front of him when, suddenly, Arredondo was hit in the face. Arredondo was briefly knocked unconscious. Although he did not see who struck him, Arredondo believed it was Appellant because Appellant was standing beside him. Arredondo did not see what Appellant had hit him with, but later testified that it was "[a] very, very hard object. I know it was a piece of metal that hit me."

Arredondo's wife also did not see the blow because she was walking in front of Arredondo. She did, however, hear the blow being delivered. She later testified that it did not sound like a fist because it sounded "very loud" and "solid." She also stated that Appellant was the only person standing close by when she turned around to see what had happened.

The police were dispatched to the scene in response to a call that there was a fight involving a pipe. After the police arrived, Arredondo identified Appellant as the person who had hit him. He told the police that he had been hit with a piece of metal. The police did not find a pipe, but they did recover a metal wrench lying on the ground near where Arredondo had been struck.

Arredondo was taken by ambulance to the hospital where it was determined that his jaw was fractured in two places. His teeth were also damaged. One of the responding police officers later testified that Arredondo's injuries were not

3

consistent with being hit with a fist, rather, they were consistent with being hit with an object.

Appellant was charged with the offense of aggravated assault. The two-paragraph indictment read, in part, as follows:

[Appellant] . . . on or about the 19th day of June, 2013 intentionally or knowingly or recklessly cause[d] bodily injury to Rene Arredondo and did use or exhibit a deadly weapon, namely, a wrench, which in the manner of its use or intended use was capable of causing death or serious bodily injury by striking . . . Rene Arredondo about the facial area[.]

. . . .

[Appellant] . . . on or about the 19th day of June, 2013 intentionally or knowingly or recklessly cause[d] bodily injury to Rene Arredondo and did use or exhibit a deadly weapon, namely, a hard metal object, which in the manner of its use or intended use was capable of causing death or serious bodily injury by striking . . . Rene Arredondo about the facial area[.]

At trial, the State presented the testimony of Arredondo, his wife, the responding police officers, and a police property and evidence technician, who testified that the wrench recovered from scene tested negative for blood. He also testified that the wrench had not been tested for DNA or fingerprints. The State introduced the wrench into evidence.

McKeel testified for the defense. He stated that he saw Arredondo aggressively push Appellant. McKeel testified that he then saw Appellant hit Arredondo in the face with a closed fist. McKeel stated that he did not see any

4

object in Appellant's hand when he hit Arredondo. Appellant did not testify at trial.

In his closing argument, defense counsel asserted that the State had failed to offer evidence showing that Appellant had struck Arredondo with any type of object. Rather, he stated that the evidence showed that Appellant had struck Arredondo with his fist in self-defense after Arredondo pushed Appellant. The jury rejected Appellant's claim of self-defense and found Appellant guilty of the offense of aggravated assault as charged in the indictment.

During the punishment phases, the State introduced evidence showing that Appellant had numerous prior convictions for misdemeanor offenses, including assault, and also showing that Appellant had a prior felony conviction for the offense of manufacture and delivery of a controlled substance.

Appellant testified in his own defense during the punishment phase. He claimed that he had only used his hand to assault Arredondo. Appellant denied hitting Arredondo with an object. The jury assessed Appellant's punishment at 10 years in prison.

Appellant filed a motion for new trial. He claimed that he had received ineffective assistance of counsel at trial. Appellant asserted that his trial counsel had denied him the opportunity to testify at the guilt-innocence phase. Appellant admitted that his counsel had informed him that he had a right to testify but had

5

then advised him not to testify. Appellant claimed that, had he testified at the guilt-innocence phase, he would have told the jury that he struck Appellant only with his fist and had not struck Arredondo with a weapon.

Appellant's trial counsel also testified at the hearing. He testified that, to the best of his recollection, he told Appellant "what I tell every client, that he has an absolute constitutional right to testify if he wants to." Trial counsel stated that he advised Appellant not to testify because Appellant had a criminal record. Trial counsel testified Appellant made the decision not to testify at the guilt-innocence phase and had expressly communicated that choice to him. Trial counsel stated that, had Appellant chosen to testify against his advice, "[he] would have asked for a record hearing outside the presence of the jury and we would have gotten his decision, if that was what it was, on the record and he would have testified."

The docket sheet indicates that the trial court denied the motion for new trial; however, there is no order in the record denying the motion. Thus, the motion was overruled by operation of law. This appeal followed.

## Sufficiency of Evidence

In his first issue, Appellant asserts that the evidence was insufficient to support the judgment of conviction for aggravated assault. Specifically, Appellant claims that the evidence was insufficient to show that he used a deadly weapon,

namely, a wrench or a hard metal object, to strike Arredondo, as alleged in the indictment.

## A.    Standard of Review

We review the sufficiency of the evidence establishing the elements of a criminal offense for which the State has the burden of proof under a single standard of review. *See Ervin v. State*, 331 S.W.3d 49, 53–54 (Tex. App.—Houston [1st Dist.] 2010, pet. ref'd) (construing majority holding of *Brooks v. State*, 323 S.W.3d 893 (Tex. Crim. App. 2010)). This standard of review is the standard enunciated in *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979). *See Winfrey v. State*, 393 S.W.3d 763, 768 (Tex. Crim. App. 2013).

Pursuant to the *Jackson* standard, evidence is insufficient to support a conviction if, considering all the record evidence in the light most favorable to the verdict, no rational fact finder could have found that each essential element of the charged offense was proven beyond a reasonable doubt. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *In re Winship*, 397 U.S. 358, 361, 90 S. Ct. 1068, 1071 (1970); *Laster v. State*, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009); *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). We can hold evidence to be insufficient under the *Jackson* standard in two circumstances: (1) the record contains no evidence, or merely a "modicum" of evidence, probative of an element of the offense, or (2) the evidence conclusively establishes a reasonable doubt. *See*

*Jackson*, 443 U.S. at 314, 318 & n.11, 320, 99 S. Ct. at 2786, 2789 & n.11; *see also Laster*, 275 S.W.3d at 518; *Williams*, 235 S.W.3d at 750.

The sufficiency-of-the-evidence standard gives full play to the responsibility of the fact finder to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). An appellate court presumes that the fact finder resolved any conflicts in the evidence in favor of the verdict and defers to that resolution, provided that the resolution is rational. *See Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793.

In our review of the record, direct and circumstantial evidence are treated equally; circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt. *Clayton*, 235 S.W.3d at 778. Finally, "[e]ach fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).

**B.    Analysis**

A person commits the offense of aggravated assault if he commits assault and uses or exhibits a deadly weapon during the commission of the assault. *See* TEX. PENAL CODE ANN. § 22.02(a)(2) (Vernon 2011). A "deadly weapon" is "(A)

8

a firearm or anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury; or (B) anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." TEX. PENAL CODE ANN. § 1.07(a)(17) (Vernon Supp. 2014).

Here, the indictment specified that Appellant had used a "deadly weapon," namely, either "a wrench" or "a hard metal object" in committing his assault against Arredondo. In light of all the evidence presented, a rational jury could have found, beyond a reasonable doubt, that Appellant used a hard metal object in committing the assault against Arredondo. Although the State did not produce evidence showing that anyone saw Appellant strike Arredondo with any object, there was sufficient evidence for a rational jury to conclude that a hard metal object had in fact been used to strike Arredondo.

Arredondo testified that, in his lifetime, he had been punched in the face by a fist and knew how that felt. He stated that it was not Appellant's fist that struck him. Arredondo testified that he was hit by "[a] very hard, very hard object. I know it was a piece of metal that hit me." When asked, "Is there any doubt in your mind that what you got hit with was a hard metal object?" Arredondo responded that he had no doubt. He also testified that he knew that it was not a stick or a rock that Appellant had used to strike him. Arredondo testified that, as a result of the blow, his jaw was fractured in two places and his teeth were damaged.

Arredondo's wife acknowledged that she had not seen Appellant hit Arredondo, and she had not seen anything in his hand. However, she also testified that she heard the blow and it did not sound like a fist hitting her husband. Rather, she stated that it sounded "very loud" and "solid."

In addition, one of the responding police officers testified that Arredondo's injuries were not consistent with being struck with a fist. The officer indicated that, due to the severity of the injuries, she believed an object had been used to strike Arredondo. Further, the evidence showed that the police recovered a metal wrench from the area where Arredondo had been assaulted. The metal wrench, which is a hard metal object, was admitted into evidence.

In challenging the sufficiency of the evidence, Appellant points out that neither Arredondo nor his wife saw Appellant strike Arredondo, and no evidence was presented to show that anyone saw Appellant with a hard metal object or wrench in his hand. Appellant also points out that McKeel testified that he saw Appellant strike Arredondo with only his fist. Appellant further cites evidence that there was no blood detected on the wrench. Lastly, Appellant calls attention to the fact that the evidence showed that the police did not test the wrench for DNA or for fingerprints.

At most, the testimony cited by Appellant created a conflict in the evidence, and we find no fault in the jury's resolution of this conflict against Appellant. *See*

*Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793. Viewing the evidence in a light most favorable to the verdict, we conclude that a rational fact finder could have found beyond a reasonable doubt that Appellant assaulted Arredondo by using a hard metal object. We hold that the evidence was sufficient to support the judgment of conviction.

We overrule Appellant's first issue.

**Ineffective Assistance of Counsel**

In his second issue, Appellant asserts that he received ineffective assistance at trial and asserts that the trial court erred when it did not grant his motion for new trial based on his ineffective assistance of counsel claim.

**A.      Governing Legal Principles**

Allegations of ineffective assistance of counsel must be firmly rooted in the record. *Salinas v. State*, 163 S.W.3d 734, 740 (Tex. Crim. App. 2005). To prevail on a claim of ineffective assistance of counsel, the defendant must show that (1) his counsel's performance was deficient and (2) a reasonable probability exists that the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); *Andrews v. State*, 159 S.W.3d 98, 101–02 (Tex. Crim. App. 2005). The defendant has the burden to establish both prongs by a preponderance of the evidence; failure to make either showing defeats

11

an ineffectiveness claim.  *Lopez v. State*, 343 S.W.3d 137, 142 (Tex. Crim. App. 2011); *see Mitchell v. State*, 68 S.W.3d 640, 642 (Tex. Crim. App. 2002).

When, as here, an appellant has presented issues of ineffective assistance in a motion for new trial, we review the trial court's denial of the motion for an abuse of discretion.  *Riley v. State*, 378 S.W.3d 453, 457 (Tex. Crim. App. 2012).  "Accordingly, when analyzing the trial court's failure to grant a new trial on the basis of ineffective assistance of counsel, we view the relevant legal standards through the prism of abuse of discretion."  *Ramirez v. State*, 301 S.W.3d 410, 415 (Tex. App.—Austin 2009, no pet.).  A trial court abuses its discretion when its decision is so clearly wrong as to lie outside the zone of reasonable disagreement.  *Cantu v. State*, 842 S.W.2d 667, 682 (Tex. Crim. App. 1992).  Such an abuse of discretion occurs only when no reasonable view of the record would support the trial court's ruling.  *Holden v. State*, 201 S.W.3d 761, 763 (Tex. Crim. App. 2006).  We view evidence in the light most favorable to the trial court's ruling, and will reverse only if no reasonable view of the record could support the trial court's finding.  *See Webb v. State*, 232 S.W.3d 109, 112 (Tex. Crim. App. 2007).

**B.    Analysis**

Appellant claims that he "was denied effective representation of counsel by not being given the opportunity to make his own decision not to testify and by

being deprived of his right to testify at trial." He asserts that the trial court should have granted his motion for new trial.

At the motion for new trial hearing, Appellant acknowledged that his trial counsel informed him that he had a right to testify. However, Appellant testified that, after advising him not to testify, his counsel did not give him an opportunity to testify. When asked whether it was his decision not to testify or whether it was his trial counsel's decision, Appellant stated that it was his trial counsel's decision. Appellant did not elaborate any further.

At the hearing, trial counsel agreed that he had advised Appellant not to testify at the guilt-innocence phase because Appellant had a prior felony conviction. Trial counsel testified that it had been Appellant's decision not to testify at the guilt-innocence phase. Although he did not remember the exact words used by Appellant, trial counsel testified that he remembered Appellant had expressly indicated to him that he did not want to testify at the guilt-innocence phase.

At a hearing on a motion for new trial, the trial court is the sole judge of witness credibility. *See Salazar v. State*, 38 S.W.3d 141, 148 (Tex. Crim. App. 2001). Thus, the trial court was entitled to believe trial counsel's testimony that Appellant was offered the opportunity to testify at the guilt-innocence phase and expressly chose not to testify. We hold that Appellant has not shown that the trial

court abused its discretion when it did not grant his motion for new trial based on his ineffective assistance of counsel claim.

We overrule Appellant's second issue.

## Conclusion

We affirm the judgment of the trial court.


Laura Carter Higley
Justice

Panel consists of Justices Jennings, Higley, and Huddle.

Do not publish. TEX. R. APP. P. 47.2(b).