

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-25-00109-CR

Christopher Joshua **PERRY**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 226th Judicial District Court, Bexar County, Texas
Trial Court No. 2022CR9652
Honorable Velia J. Meza, Judge Presiding

Opinion by:   Irene Rios, Justice

Sitting:      Rebeca C. Martinez, Chief Justice
              Irene Rios, Justice
              Lori I. Valenzuela, Justice

Delivered and Filed: June 24, 2026

AFFIRMED

In two issues, appellant Christopher Joshua Perry contends he received ineffective assistance of counsel because his appointed counsel (1) deprived him of his rights to determine whether to proceed with an insanity defense and (2) failed to object to an alleged inadmissible letter sent directly to the trial court and used for questioning during punishment. We affirm.

## BACKGROUND

The police came to Perry's apartment complex in response to Perry's girlfriend ("Marie") reporting Perry previously assaulted her. While the police officer assisted Marie, Perry stabbed the police officer in the neck. Perry was arrested and indicted with attempted capital murder with a deadly weapon. Prior to Perry pleading "no contest" to the offense at his sentencing hearing, Perry was found incompetent to stand trial. After his competency was finally restored, Perry pled "no contest" to committing the offense pursuant to an open plea, thereby, allowing the trial court to assess his sentence.

The trial court accepted Perry's plea, determined the evidence was sufficient to find Perry guilty of committing attempted capital murder with a deadly weapon, and reset the case for sentencing. Following the sentencing hearing, the trial court assessed a thirty-five-year sentence. Perry filed a motion for new trial and requested a hearing. At the conclusion of the hearing on his motion for new trial, the trial court denied Perry's motion. Perry appeals.

## INEFFECTIVE ASSISTANCE OF COUNSEL

### A. Standard of Review and Applicable Law

"To prevail on a claim of ineffective assistance of counsel, a defendant must demonstrate two things: deficient performance and prejudice." *Miller v. State*, 548 S.W.3d 497, 499 (Tex. Crim. App. 2018). A defendant must show that: (1) his trial counsel's representation fell below the objective standard of reasonableness, and (2) a reasonable probability exists that but for counsel's deficiency the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687–88, 694 (1984); *see also Hernandez v. State*, 726 S.W.2d 53, 56–57 (Tex. Crim. App. 1986) (applying *Strickland* to an ineffective assistance claim under the Texas Constitution).

To show deficient performance, a defendant must show "errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. We "indulge in a strong presumption that counsel's conduct fell within the wide range of reasonable assistance and that the challenged action might be considered sound trial strategy." *Ex parte Jimenez*, 364 S.W.3d 866, 883 (Tex. Crim. App. 2012) (quotation omitted). "The mere fact that another attorney might have pursued a different tactic at trial does not suffice to prove a claim of ineffective assistance of counsel." *Id*. "The *Strickland* test is judged by the 'totality of the representation,' not by counsel's isolated acts or omissions, and the test is applied from the viewpoint of an attorney at the time he acted, not through 20/20 hindsight." *Id*.

Second, assuming the defendant can meet the first requirement, the defendant must demonstrate prejudice by showing there is a reasonable probability that, but for his attorney's unprofessional errors, the result of the proceeding would have been different. *Smith v. State*, 286 S.W.3d 333, 340 (Tex. Crim. App. 2009). A reasonable probability is a "probability sufficient to undermine confidence in the outcome." *Id.* (quoting *Strickland.* 466 U.S. at 687) (internal quotation marks omitted). We review the trial court's decision on prejudice *de novo* while deferring to the trial court's resolution of underlying factual determinations. *See Johnson v. State*, 169 S.W.3d 223, 239 (Tex. Crim. App. 2005).

"[A]ny allegation of ineffectiveness must be firmly founded in the record and the record must affirmatively demonstrate the alleged ineffectiveness." *Johnson v. State*, 624 S.W.3d 579, 586 (Tex. Crim. App. 2021) (internal quotation marks and alterations omitted). "Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim." *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). A court

need not address both elements of an ineffective assistance of counsel claim when the defendant makes an insufficient showing as to either element. *Strickland*, 466 U.S. at 697.

"When the trial court denies a motion for new trial alleging ineffective assistance of counsel, 'we view the relevant legal standards through the prism of abuse of discretion.'" *Lampkin v. State*, 470 S.W.3d 876, 903 (Tex. App.—Texarkana 2015, pet. ref'd) (quoting *Ramirez v. State*, 301 S.W.3d 410, 415 (Tex. App.—Austin 2009, no pet.)). "The test for abuse of discretion is not whether, in the opinion of the appellate court, the facts present a suitable case for the trial court's action, but rather, whether the trial court acted without reference to any guiding rules or principles." *State v. Simpson*, 488 S.W.3d 318, 322 (Tex. Crim. App. 2016). "The bare fact that a trial court may decide a matter differently from an appellate court does not demonstrate an abuse of discretion." *Id*. "Appellate courts view the evidence in the light most favorable to the trial court's ruling, defer to the court's credibility choices, and assume that all reasonable fact findings in support of the ruling have been made." *Id*.

### B. Applicable Facts Pertaining to Perry's Claims

#### 1. Sentencing Hearing

During Perry's sentencing hearing, mental health crisis response clinician Angelica Navarro testified about the offense. Navarro was assisting Marie, who lived with Perry, with housing and other mental health services. Adult Protective Services ("APS") contacted Navarro to inform her that Marie had reported Perry assaulted her earlier that day. Navarro immediately went to Marie's apartment, spoke with the APS worker, and then spoke with Marie, who was sitting on the stairs visibly distressed and shaking. At Marie's request, Navarro contacted the police, and San Antonio Police Department Officer Donald Foster responded to the call.

Another resident of the apartment complex offered Marie a place to stay. Officer Foster and Navarro then assisted Marie in retrieving some of her belongings from Perry's apartment. Upon opening the door, both Navarro and Officer Foster noticed Perry was holding a pipe. According to Officer Foster, Perry asked if he could go outside and smoke marijuana. Officer Foster explained to Perry that he would have to arrest him if he went outside and smoked it. Marie then walked into the apartment and came out with a pillow that Perry claimed was his. Perry demanded Officer Foster get his pillow back, but Officer Foster refused.

Marie and Perry argued as Marie left. Because Perry was still upset about the pillow, Officer Foster advised Marie to go into the neighbor's apartment. Officer Foster recalled that as he was instructing Marie, he felt a sharp pain in his neck and soon realized Perry had a knife in his hand and was then lunging toward Officer Foster trying to stab him in the stomach. Officer Foster stopped Perry, pushed him into a corner, grabbed his hands, and commanded Perry to drop the knife. When Perry refused, Officer Foster drew his gun and told Perry to drop the knife again: Perry complied. Nevertheless, Perry continued fighting with and resisting Officer Foster, causing them to fall to the ground. During the struggle, Perry grabbed Officer Foster's body camera and threw it over the apartment balcony. However, the camera was still able to record most of the incident, and the recording was entered into evidence and played for the trial court.

Navarro added that Perry was also making racial slurs, and while she did not see Perry initially stab Officer Foster, as soon as she turned around, she saw Perry holding a knife stabbed into Officer Foster's neck. After pushing Marie into the neighbor's apartment, Navarro called 911 and watched from the apartment as Officer Foster and Perry continued to struggle.

Another body camera recording was entered into evidence that included the interview between the responding detective and Perry following Perry's arrest and *Miranda* warnings. Perry

admitted stabbing Officer Foster in the neck and then claimed he was trying to stab Officer Foster in the stomach because he thought Officer Foster had drawn his weapon. Despite Perry also stating that he did not want to stab Officer Foster "completely," the detective testified Perry claimed he stabbed Officer Foster in self-defense, rather than mitigating his culpability or explaining he could not control his actions or knew what happened. In the detective's opinion, based on his interview with Perry and observation of Officer Foster's recording of the incident, Perry appeared to know right from wrong and the consequences of his actions.

Forensic psychologist and neuropsychologist Dr. John Matthew Fabian testified that he has evaluated Perry multiple times "for both competency [and] assessing his mental state at the time of the offense." In Dr. Fabian's opinion, Perry suffers from mental illness, specifically, "schizophrenia, and he has endorsed evidence of schizoaffective disorder related to schizophrenia and, secondarily, a mood disorder, typically, depression." According to Dr. Fabian, Perry's mental illness began around January 2019 after a "psychotic break" continuing at least to the day of the sentencing hearing. When asked whether Perry could have been found insane at the time of the offense, Dr. Fabian agreed, stating that there are "certainly arguments to support an insanity defense" in Perry's case. Nonetheless, the State objected arguing Perry failed to provide a notice of an insanity defense. The trial court sustained the State's objection, to which Perry's defense counsel (hereinafter referred to as "Counsel") responded, "Understood."

Dr. Fabian still opined that on the date of the offense, Perry was suffering from mental illness. To further explain to what extent Perry was affected by his mental illness, Dr. Fabian testified that when he and Perry discussed the nature of the offense and its consequences, "there did not appear to be any real rational motive for his offending[, that it] was based in psychosis." Dr. Fabian added that despite Perry realizing much later that his actions were illegal, shortly after

the offense, Perry "had a difficult time articulating his mindset at that moment." The day before the stabbing, Perry's medication was changed, and Dr. Fabian explained the changes in his medication could have had some effect on Perry's mood and temperament, including being agitated and angry. Dr. Fabian stated that based on Perry's behavior at the time of the offense, he "was not in his right [state of] mind[,]" that he was "psychotic and paranoid at the time." With respect to Perry's belief that Officer Foster was going to draw his weapon and shoot him, Dr. Fabian described this belief as "part of the paranoia, the psychotic delusional mindset, and this misperception of reality [is seen] in schizophrenia."

During cross-examination, while maintaining Perry's motive could still be "based in psychosis," with respect to his awareness of certain facts surrounding the incident, Dr. Fabian acknowledged Perry likely knew (1) the illegality and consequences of drug possession, (2) the concepts of hierarchy such as Officer Foster having a supervisor, (3) the rudimentary or basic understanding of law and order based on Perry's request for Officer Foster to stop Marie from taking his pillow, and (4) the consequences of Officer Foster pointing his firearm while instructing Perry to drop the knife. Additionally, Dr. Fabian agreed Perry has a history of medication noncompliance, and therefore, the options of Perry's placement are limited and must be closely monitored to avoid risks to Perry and the community.

Perry testified at his sentencing hearing as well. Perry stated "during the moment, [he] did not feel right" about what happened to Officer Foster. He stated he felt bad or felt like he did not do the right thing to Officer Foster. Perry agreed he had been noncompliant taking his medication which is detrimental for someone with mental illness, but stated if he were granted deferred adjudication, he would take his medication and let the doctors know if he felt it was not working. During cross-examination, Perry acknowledged being aware of many facts surrounding the

incident including those realizations listed by Dr. Fabian. He also acknowledged he was playing a difficult video game before his encounter with Officer Foster. He testified he could follow the game's rules and successfully play the game.

The State then questioned Perry whether he was aware that his sister had written a letter to the court describing violent incidents that occurred when Perry was not taking his medication, including Perry killing the family cat in front of a front door recording device. Perry stated he knew about the letter and then admitted to killing the cat but claimed he did so because he did not want the cat to be in pain anymore while he inflicted pain on the cat. Counsel did not object to the State asking questions about the letter or the cat, and Counsel did not ask Perry any questions about the letter and its contents.

Prior to announcing Perry's sentence, the trial court explained to Perry that the case was not appropriate for deferred adjudication because Perry stabbed Officer Foster without justification. The trial court added that despite the nature of the offense, the trial court set bond allowing him to get out of jail and yet Perry stopped taking his medication becoming a safety risk to the community. Because of his choice to discontinue taking his medication subjecting the community to a safety risk, the trial court stated he would be sentenced to prison. The trial court sentenced Perry to thirty-five years in prison.

### 2. *Motion for New Trial*

Perry's new appellate counsel filed a motion for new trial. With respect to the letter from Perry's sister, after explaining when Counsel was able to read the letter, Perry asserted Counsel provided ineffective assistance of counsel by failing to request a continuance to further investigate the letter. Attached to the motion was an affidavit wherein Counsel admitted he erred by not

requesting a continuance when informed about the letter. The trial court[1] conducted a hearing on Perry's motion for new trial. At the hearing, in addition to complaining Counsel should have requested a continuance, Perry added that Counsel further provided ineffective assistance of counsel by failing to object to the State's questioning Perry about the letter, and Counsel agreed.

Dr. Fabian again testified on behalf of Perry at the hearing on the motion for new trial and explained that while he was appointed to evaluate Perry's competency to stand trial, he informed Counsel that because Perry suffered from "a serious condition and mental illness of schizophrenia" the possibility of an insanity defense could be explored. Nonetheless, Dr. Fabian understood that "[Perry] wanted to pursue a deferred adjudication and outpatient mental health treatment program[] at that time" because Perry was enrolled and supposed to attend college soon. Dr. Fabian added though, that based on the facts of the case, both he and Counsel questioned "how viable an insanity defense would be."

Counsel testified and explained that when evaluating the case, he believed Perry would not do well in prison as a result of his mental illness, and because Perry had "a very insignificant criminal history[,] was young[, and] had a mental illness history," deferred adjudication was a viable possibility. Counsel also considered the trial court's approach to this case, in what Counsel perceived as the trial court trying to assist Perry with his mental health treatment. Counsel testified in retrospect, he "should have at least filed the motion for insanity defense" even if the defense was not pursued, and his failure to do so "harmed [Perry] because that defense wasn't available at a later time."

---

[1] Following Perry's sentencing hearing but prior to the hearing on the motion for new trial, a new trial judge was appointed to the 226th Judicial District Court, Bexar County, Texas. Therefore, the trial court judge who sentenced Perry was not the same trial court judge who heard Perry's motion for new trial.

Counsel then discussed the letter Perry's sister sent directly to the trial court before the sentencing hearing. Counsel explained that the trial court made both him and the State aware of the letter about ten days prior to sentencing, allowing both parties to read the letter if desired. According to Counsel, the trial court indicated that it did not initially know the letter pertained to Perry until reading it. Counsel claimed he did not read the letter until a couple of hours before the sentencing hearing began.

While Perry's sister was not present at sentencing, the State cross-examined Perry regarding Perry killing the cat. Counsel affirmed he neither asked for a continuance to investigate more about the letter before the sentencing hearing nor objected to the State's use of the letter to cross-examine Perry. Counsel stated he regretted not asking for a continuance before sentencing. Counsel also added that it was "error on [his] part" to not object to the State asking Perry questions about the letter. Counsel stated his error was "[h]ighly prejudicial" to Perry. Moreover, based on how Perry responded to the State's questioning, Counsel acknowledged he "should have" asked for a continuance to assure Perry was still competent to undergo the sentencing hearing because Counsel felt he made the "wrong decision" calling Perry to testify.

The State called the prosecutor who handled Perry's case. According to the prosecutor, he agreed with Counsel that the trial court told the parties about the letter approximately ten days before the sentencing hearing. However, the prosecutor said that both he and Counsel read the letter at that time, and Counsel commented, "Well, that's not very helpful." The prosecutor then explained the State made efforts to reach out to Perry's sister to procure her as a potential witness. The trial court warned the State that without the testimony of Perry's sister, the contents of the letter would be hearsay. Nonetheless, during sentencing, the prosecutor asked Perry if he had

knowledge of the letter. After Perry affirmed he knew about the letter, the prosecutor asked him questions about the cat as Perry had personal knowledge of the events.

With respect to Perry's ability to use the insanity defense, the prosecutor acknowledged speaking with Counsel briefly about it, but stated Counsel informed the State that he was not going to pursue it because Perry was "wanting the potential [for] deferred."

At the conclusion of the motion for new trial hearing, the trial court denied Perry's motion on the insanity defense issue, stating Counsel's decision "was a reasonable trial strategy to pursue deferred adjudication." Additionally, after hearing additional information regarding the letter, the trial court ruled again stating, "The motion for new trial is denied."

*C. Analysis*

*1. Insanity Defense*

In his first issue, Perry complains that he received the ineffective assistance of counsel because Counsel failed to provide Perry with the right to choose whether to proceed with an insanity defense.

Counsel explained at the motion for new trial hearing that his trial strategy was to request and receive deferred adjudication on Perry's behalf considering his mental health, age, lack of prior convictions, college enrollment plans, and that the trial court appeared to be favorable towards Perry. Dr. Fabian testified that when discussing a potential insanity defense with Counsel, Dr. Fabian understood that Counsel, Perry, and Perry's family wanted to instead pursue deferred adjudication for Perry. When the trial court denied Perry's motion for new trial it specifically noted Counsel's decision to pursue deferred adjudication rather than an insanity defense was a reasonable trial strategy.

Unlike the majority of the ineffective assistance of counsel claims appellate courts review on direct appeal, here, we have a record wherein Perry's defense counsel explained his trial strategy and why the insanity defense was not pursued. While in retrospect Perry's trial counsel claims he made an error, our review focuses on counsel's viewpoint at the time he acted, "not through 20/20 hindsight." *Ex parte Jimenez*, 364 S.W.3d at 883. As previously stated, "[t]he mere fact that another attorney might have pursued a different tactic at trial does not suffice to prove a claim of ineffective assistance of counsel." *Id*. Therefore, we conclude Perry failed to demonstrate the first prong of his ineffective assistance of counsel claim regarding his trial counsel not using the insanity defense. *See Strickland*, 466 U.S. at 687–88, 694.

Accordingly, we overrule Perry's first issue.

### 2. The Letter

In his second ineffective assistance of counsel claim, Perry complains about his trial counsel's failure to object to the State questioning Perry about the letter, particularly Perry's killing of the cat.[2]

Counsel stated his failure to object to the State's questions was error that prejudiced Perry. For purposes of this appeal, we will assume without deciding that Counsel's actions in this regard were deficient and thus determine whether Perry suffered prejudice as a result of Counsel's actions. *See id.* As stated above, for Perry to demonstrate the sufficient prejudice, he must show a reasonable probability—a "probability sufficient to undermine confidence in the outcome"—that, but for Counsel's errors, the result of the proceeding would have been different. *Smith*, 286 S.W.3d at 340 (quoting *Strickland*, 466 U.S. at 687, 694).

---

[2] Perry also argued in his motion for new trial and at the hearing on his motion for new trial that Counsel's failure to request a continuance upon discovering the letter resulted in ineffective assistance of counsel. However, on appeal, Perry limits his complaint to Counsel's failure to object to the State's questioning him about the letter, and thus, we address only the complaint raised on appeal.

Here, at the conclusion of the sentencing hearing, the trial court expressed that because Perry stabbed Officer Foster in the neck, this case was not appropriate for deferred adjudication. The trial court added that Perry's noncompliance with taking medication to address his mental health while out on bond also factored into the trial court's sentencing determination. Officer Foster's body camera recording was played for the trial court, showing a chaotic scene including Perry stabbing Officer Foster and continuing to struggle with him until Officer Foster gained control over Perry. The detective who at the scene questioned Perry and recorded the questioning on his body camera testified that Perry answered questions indicating he was aware of his actions.

Consistent with Perry's testimony, Officer Foster testified Perry was aware of legal actions as he discussed potential legal uses of marijuana with Officer Foster, requested Officer Foster act in his law enforcement capacity to stop Marie from taking his pillow, and knew the consequences of what could happen if he did not drop the knife after Officer Foster drew his gun. Perry knew and could explain the complexities of playing a video game. Perry also acknowledged that a police officer's body camera footage can record evidence and thus Perry threw Officer Foster's body camera over the apartment balcony.

Considering all the evidence presented to the trial court during Perry's sentencing hearing, along with the trial court's knowledge of Perry's mental health and Perry's pretrial approach to his treatment, coupled with the serious nature of the offense, we cannot conclude, within a reasonable probability, that but for Counsel's errors, the result of Perry's sentencing would have been different. That is, we cannot conclude the potential prejudicial impact of the letter or the State's questioning Perry about killing the cat, rose to the "probability sufficient to undermine confidence in the outcome" of the trial court sentencing Perry to thirty-five years in prison. *See Smith*, 286 S.W.3d at 340. Perry failed to demonstrate sufficient prejudice to support the second prong of his

ineffective assistance of counsel claim pertaining to the letter. *See Strickland*, 466 U.S. at 687–88, 694.

Accordingly, we overrule Perry's second issue.

We conclude Perry failed to show he was denied the ineffective assistance of counsel. Thus, the trial court did not err in denying his motion for new trial.

### CONCLUSION

Having overruled Perry's issues on appeal, we affirm the trial court's final judgment of conviction.

Irene Rios, Justice

DO NOT PUBLISH